**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

UNITED STATES OF AMERICA,

                              CRIMINAL NO. 10-20123

      Plaintiff,            HONORABLE VICTORIA A. ROBERTS

vs.

D-2 DAVID BRIAN STONE, JR., a.k.a. "Junior,"

      Defendant.

_____/

**GOVERNMENT'S BRIEF IN OPPOSITION TO**
**MOTION TO REVOKE DEFENDANT'S DETENTION ORDER**

Defendant David Brian Stone, Jr. (D-2) (hereinafter "defendant") has moved pursuant to Title 18, United States Code, Section 3145(b), for the revocation of the detention order issued in this case. The United States is opposed to the requested relief and requests a hearing on this matter.

**PROCEDURAL HISTORY**

On March 27, 2010, arrest warrants were executed in Michigan, Illinois, and Ohio, against eight of the defendants in this case. These arrest warrants were issued subsequent to the defendants' indictment for violations of Title 18, United States Code, Sections 2384 (seditious conspiracy), 2332a(a)(2) (attempted use of weapons of mass destruction), 842(p)(2) (teaching or demonstrating the use of explosive materials), and 924(c) (carrying, using, or possessing a firearm during a federal crime of violence). Law enforcement officers also attempted to execute

1

an arrest warrant against Joshua Matthew Stone (D-3), he could not be located at that time.

On March 29, 2010, the defendants in this case, with the exception of Joshua Stone, made their initial appearances and were temporarily detained pending detention hearings which were scheduled for March 31, 2010. Later on March 29, 2010, Joshua Stone was arrested and made his initial appearance on March 30, 2010. At his initial appearance, he too was temporarily detained and his detention hearing was also scheduled for March 31, 2010.

United States Magistrate Judge Donald A. Scheer conducted a joint detention hearing for all the defendants in this case, except Thomas Piatek (D-7) who was detained after a detention hearing conducted in the United States District Court for the Northern District of Indiana, on March 31, April 1, and April 2, 2010. At the conclusion of the hearing, Magistrate Judge Scheer ordered the defendants detained pending trial.[1]

---

[1] In his order of detention, Magistrate Judge Scheer found that probable cause existed to believe that David Stone, Jr., had committed an offense under Title 18, United States Code, Section 924(c), and an offense enumerated in Title 18, United States Code, Section 2332b(g)(5)(B) (which includes violations of Title 18, United States Code, Section 2332a). Accordingly, it is presumed that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community. 18 U.S.C. § 3142(e)(3). Magistrate Judge Scheer also found that the defendant had not rebutted the presumption. Finally, Magistrate Judge Scheer found that the government had established by a preponderance of the evidence that the defendant is a flight risk, and by clear and convincing evidence that the defendant will endanger the public safety if released. Magistrate Judge Scheer supported these findings by enumerating the information upon which he relied as applied to the factors contained in Title 18, United States Code, Section 3142(g). Det. Order (Doc. No. 55) at 1.

## THE APPROPRIATENESS OF PROFFERED INFORMATION
## AT DETENTION HEARINGS

In his motion and brief in support of his motion for revocation of the detention order, the defendant again raises the question of the government's reliance on proffered information at the detention hearing. At the detention hearing, the government had introduced information with respect to each defendant's risk of flight and dangerousness by proffer.[2] The defendant objected to the government's reliance on proffered information and does so again in his motion for revocation of the detention order.[3]

As before, the defendant indicates that he should have the opportunity to challenge the government's information and confront and cross-examine the witnesses upon which the government's proffer was based, and claims that the government's reliance on proffered information violates due process.

The defendant's procedural rights at a detention hearing are set forth in Title 18, United States Code, Section 3142(f). That section states: "[The defendant] shall be afforded an opportunity to testify, to present witnesses, to cross-examine witnesses who appear at the

---

[2]The government did not rely solely upon proffered information. In addition to the proffered details of each defendant's involvement and the details contained in the indictment, the government introduced a photograph of all the defendants carrying firearms during HUTAREE training, introduced a photograph of a weapons and ammunition cache seized from one of the co-conspirators, introduced a diagram and photograph of an Improvised Explosive Device (IED) with an Explosively Formed Projectile that Brian David Stone (D-1) or another HUTAREE member obtained off the internet and which was given to a person believed to be capable of constructing such a device, and also played an audio clip of a speech David Brian Stone prepared and intended to deliver at a summit with other militia leaders.

[3]Despite his objection, the defendant himself relied solely upon proffered information at the detention hearing.

hearing, and to present information by proffer or otherwise.  The rules concerning admissibility of evidence in criminal trials do not apply to the presentation and consideration of information at the hearing."  18 U.S.C. § 3142(f).

Although this section is silent as to how the government may proceed at a detention hearing, every authority to consider the issue of the propriety of proceeding by proffer–including, importantly, the United States Court of Appeals for the Sixth Circuit–has held that the government has the absolute right, in its sole discretion, to proceed by proffer at a detention hearing. *United States v. Webb*, 238 F.3d 426, 2000 WL 1721060, *2 (6th Cir. Nov. 6, 2000) ("A full evidentiary hearing was not required. The government may proceed in a detention hearing by proffer or hearsay"); *United States v. El-Hage*, 213 F.3d 74, 82 (2d Cir. 2000) ("While the defendant may present his own witnesses and cross-examine any witnesses that the government calls, either party may proceed by proffer and the rules of evidence do not apply"); *United States v. Smith*, 79 F.3d 1208, 1210 (D.C. Cir. 1996) ("We join our sister circuits in holding" that it "literally goes without saying" that the government has the right to proceed by proffer); *United States v. Gaviria*, 828 F.2d 667, 669 (11th Cir. 1987) ("the government as well as the defense may proceed by proffering evidence"); *United States v. Winsor*, 785 F.2d 755, 756 (9th Cir. 1986) ("the government may proceed in a detention hearing by proffer or hearsay"); *United States v. Koubriti,* No. 01-CR-80778, 2001 WL 1525270, *1 n. 3 (E.D.Mich. Oct. 16, 2001) (Rosen, J.) ("a number of circuits-including the Sixth Circuit-have held that evidence

proffers by the government are adequate").[4]  Notably, the defendant cites no authority to the contrary and the government is aware of none.

Title 18, United States Code, Section 3142(f) does create a right to cross-examine witnesses "who appear at the hearing."  18 U.S.C. § 3142(f).  This right of cross-examination does not, however, require the government to present live testimony.  It only allows the defendant to cross-examine any witnesses who do testify.  As the United States Court of Appeals for the District of Columbia Circuit held in *United States v. Smith*:

> Smith also argues that the district court's decision to permit the Government to proceed by proffer denied him procedural due process and his right under the Sixth Amendment to confront his accusers. *A pretrial detention hearing, however, is neither a discovery device for the defense nor a trial on the merits.* The process that is due is only that which is required by and proportionate to the purpose of the proceeding.  That purpose includes neither a reprise of all the evidence presented before the grand jury . . . nor the right to confront non-testifying government witnesses . . . .  *A right to require the Government to produce its witnesses against him would complicate the hearing to a degree out of proportion to the liberty interest at stake, the interest in remaining free until trial, for what is by statute a period of limited duration.*

79 F.3d at 1210 (citations omitted)(emphasis added).

The defendant seeks to challenge the government's proffered information and he is free to do so.  He may testify, call witnesses, and proffer his own testimony.  What he may not do, however, is compel the government to call live witnesses with the hope of transforming the

---

[4]*See also, United States v. Acevedo-Ramos*, 755 F.2d 203, 208 (1st Cir. 1985); *United States v. Ferranti*, 66 F.3d 540, 542 (2nd Cir. 1995); *United States v. Delker*, 757 F.2d 1390, 1397 (3rd Cir. 1985); *United States v. Fortna*, 760 F.2d 243, 250 (5th Cir. 1985); *United States v. Portes*, 786 F.2d 758, 767 (7th Cir. 1985).

pretrial detention hearing into a discovery device, a mini-trial, or a reprise of the grand jury proceedings. Under Title 18, United States Code, Section 3142(f) and clearly-established Sixth Circuit precedent, the defendant's objection to the government's proffered information is spurious.

## PRESUMPTION

Under certain circumstances, it is presumed that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community. These circumstances include a probable cause determination that the person committed an offense under Title 18, United States Code, Section 924(c), or an offense enumerated in Title 18, United States Code, Section 2332b(g)(5)(B). 18 U.S.C.§ 3142(e)(3). One of the offenses listed under Title 18, United States Code, Section 2332b(g)(5)(B), is violations of Title 18, United States Code, Section 2332a (relating to use of weapons of mass destruction). 18 U.S.C. § 2332b(g)(5)(B)(ii).

The government is entitled to rely on this presumption because the defendant has been indicted for violations of Title 18, United States Code, Sections 924(c) and 2332(a)(2). The indictment, which required the government to establish probable cause to believe the defendant committed the charged crimes, is sufficient to support a finding of probable cause triggering the presumption. *United States v. Hazime*, 762 F.2d 34, 37 (6th Cir.1985).

Although this presumption is subject to rebuttal, in our view, the defendant has offered little evidence to show that his release would not pose a flight risk or a danger to the community.

The defendant offers information related to his history and characteristics such as that he is young, was employed at the time of his arrest, lives with his fiancee and child, has limited financial resources, has no physical or mental condition, has no history of alcohol or drug abuse, and has no criminal record. Regarding the nature of the offense, the weight of the evidence, and the danger he may pose to another person or the community, he only offers the claim that the weight of the evidence is not strong, contrary to the finding of the magistrate judge, that a search of his new apartment did not yield any weapons,[5] that he was not at virtually all HUTAREE training events,[6] that he was not present when the need to kill judicial personnel and law officers was discussed and was not present when the April 2010 covert reconnaissance operation was discussed,[7] and that he held no leadership role in the HUTAREE and did not provide training in

---

[5] It is not surprising that a search of defendant's current residence did not yield any weapons. The defendant moved into this residence on or about March 20, 2010, after having lived at his fiancee's parents home for several months. On March 13, 2010, the defendant revealed that he was keeping his weapons at his father's residence. A search of that residence on March 27-28, 2010, recovered 37 firearms. It has been reported that David Brian Stone, Joshua Stone, and the defendant each had a shortened firearm. Included withing the recovered firearms were 3-4 firearms that did not appear to be of legal length. A complete analysis of these firearms is ongoing. The search of his current residence did yield his HUTAREE uniform and ammunition.

[6] The defendant was present at the following HUTAREE meetings and training events: October 18, 2008, November 15, 2008, January 17, 2009, February 2009, March 27-28, 2009, June 12-13, 2009, July 25, 2009, August 22, 2009, September 13, 2009, December 12, 2009, January 9, 2010, February 20, 2010, and March 13, 2010. The government would suggest that this constitutes significant participation and represents most of the significant meetings/training events.

[7] It is believed that he was present on August 22, 2009, when killing law enforcement officers was discussed, and also on January 9, 2010, when the April 2010 operation was discussed, and on February 20, 2010, when killing law enforcement officers was again discussed.

ambush tactics.

In our view, these claims by the defendant do not provide adequate evidence to rebut this statutory presumption. Although the government is entitled to rely upon this presumption to justify the defendant's detention, it does not rely solely upon this presumption, and has offered ample evidence and information demonstrating that the defendant is both a flight risk and a danger to the community if released.

**FACTS**

As noted in the indictment and the evidence introduced and the information proffered by the government at the detention hearing, the defendant is a member of the HUTAREE, an anti-government extremist organization based in Lenawee County Michigan. Since at least 2008, the HUTAREE has been meeting regularly to conduct military-style training in Lenawee County and elsewhere. The purpose of this training has been to plan and prepare for the impending war with the HUTAREE's enemies--the primary enemy being local, state, and Federal law enforcement, collectively referred to by the HUTAREE as the "brotherhood".

The HUTAREE is led by the defendant's father, David Brian Stone (D-1), and the defendant's brother serves as the second in command. The defendant's step-mother, Tina Mae Stone (D-4) is responsible for communications with HUTAREE members and between the HUTAREE and other militia groups. The defendant serves as an explosives and tactics trainer and often serves along with others as the "opposition force" during training. As the opposition force leader he works with other HUTAREE members to provide a force against which the

HUTAREE can train. In this capacity, the defendant has laid in wait under cover and concealment to ambush HUTAREE patrols with gun fire, trip-wired explosive devices, and command-detonated devices. At times, he has concealed himself in tree stands and ambushed HUTAREE patrols from above. It is believed that this training, coupled with training regarding how the HUTAREE would use trip-wired and command detonated explosive devices against their "enemy", is intended not only to teach HUTAREE members how to respond to an opposition force ambush, but how to establish their own ambushes.

In general, the HUTAREE planned to commit some violent act to draw the attention of law enforcement or government officials and which would prompt a response by law enforcement. Possible such acts discussed included killing a member of law enforcement during a traffic stop, killing a member of law enforcement and his or her family at home, ambushing a member of law enforcement in rural communities, luring a member of law enforcement with a false 911 emergency call and then killing him or her, and then attacking the funeral procession motorcade with weapons of mass destruction. The HUTAREE would then retreat to one of several "rally points" where the HUTAREE would be prepared to defend in depth with trip-wired and command detonated anti-personnel Improvised Explosive Devices (IED), ambushes, and prepared fighting positions. The HUTAREE believe that these acts would intimidate and demoralize law enforcement, diminish their ranks, and render them ineffective. The HUTAREE further believe that this engagement would then serve as a catalyst for a more wide-spread uprising against the Government.

In furtherance of this plan, the defendants acquired firearms, magazines, and ammunition,

explosives and other components for destructive devices, uniforms, communications equipment, supply and ammunition vehicles, and medical and other supplies. On numerous occasions, the defendants engaged in military-style training in anticipation of the planned-for military operations, to include firearms and explosives training, weapons proficiency drills, patrolling and reconnaissance exercises, close quarter battle drills, and "man-down" drills, and prepared defensive fighting positions, ambush kill zones, and storage bunkers. During these training sessions, each conspirator in attendance carried and used at least one firearm. This training has also included instruction and demonstrations regarding the manufacturing and use of destructive devices and weapons of mass destruction. The defendant has been a regular participant in this training and has taught and demonstrated the use of trip-wired and command detonated explosive devices.

The defendants also planned the killing of an unidentified member of local law enforcement, and the subsequent attack on law enforcement vehicles during the funeral procession with Improvised Explosive Devices (lED) with Explosively Formed Projectiles (EFP). Subsequently, and in furtherance of this plan, David Brian Stone, or another acting at his direction, obtained information about such devices over the internet and emailed diagrams of such devices to a person he believed capable of manufacturing the devices. Also, in furtherance of this plan, HUTAREE members provided materials necessary for the manufacturing of such devices.

## ARGUMENT

Under Title 18, United States Code, Section 3142(e)(1), detention is appropriate if a judicial officer determines that "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(e)(1). As noted above, the magistrate judge found that the government had established by a preponderance of the evidence that the defendant is a flight risk, and by clear and convincing evidence that the defendant will endanger the public safety if released.

In making this determination, the court is required to consider the factors enumerated in Title 18, United States Code, Section 3142(g). These factors include: (1) the nature and circumstances of the charged offenses; (2) the weight of the evidence; (3) the person's history and characteristics; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release. 18 U.S.C. § 3142(g).  In considering these factors, the court must be persuaded by a preponderance of the evidence that no condition or combination of conditions will assure the defendant's presence, or must be persuaded by clear and convincing evidence that and that no condition or combination of conditions will assure the public safety. 18 U.S.C. §3142(f).

As noted above, at the conclusion of the detention hearing, Magistrate Judge Scheer ordered the defendant detained pending trial. In his order of detention, Magistrate Judge Scheer found that the defendant had committed offenses giving rise to this presumption, and that the defendant had not rebutted the presumption. Moreover, he found that the government had

established by a preponderance of the evidence that the defendant is a flight risk, and by clear and convincing evidence that the defendant will endanger the public safety if released.

A challenge of a detention order is reviewed *de novo* by the court. *United States v. Hazime*, 762 F.2d 34, 36 (6th Cir. 1985). In *Hazime*, the district court judge "not [ed] that a clearly erroneous standard of review of the magistrate's decision was probably correct, ... [but] held a *de novo* hearing on the detention order." *Id*. Although the United States Court of Appeals for the Sixth Circuit did not disturb this procedure, it did not mandate a particular standard of review. *Id*. at 36-37. Nonetheless, United States district courts within the Sixth Circuit have consistently adhered to a requirement of *de novo* review. See, e.g., *United States v. Yamini*, 91 F.Supp.2d 1125, 1130 (S.D. Ohio 2000); *United States v. Williams*, 948 F.Supp. 692, 693 (E.D. Mich.1996); *United States v. Alexander*, 742 F.Supp. 421,423 (N.D. Ohio 1990). Moreover, *de novo* review of detention orders issued by magistrate judges appears to be the majority view among the other circuits. *See, e.g., United States v. Gonzalez*, 149 F.3d 1192 (10th Cir.1998); *United States v. Clark*, 865 F.2d 1433, 1436 (4th Cir.1989); *United States v. Hurtado*, 779 F.2d 1467, 1481 (11th Cir.1985); *United States v. Leon*, 766 F.2d 77, 80 (2nd Cir.1985); *United States v. Delker*, 757 F.2d 1390, 1394 (3rd Cir.1985).

Accordingly, the district court should make an independent determination of the defendant's eligibility for release. Although the government is again entitled to rely upon the statutory presumption, we are confident that the evidence and information proffered by the government establishes that the defendant is a flight risk and is a danger to another person or the community if released.

**A. Defendant Poses a Danger to the Community**

Defendant is charged with violating Title 18, United States Code, Sections 2384 (seditious conspiracy), 2332a(a)(2) (attempted use of weapons of mass destruction), and 842(p)(2) (teaching and demonstrating use of explosive materials), and two counts of violating Section 924(c) (carrying or using a firearm during a federal crime of violence). A violation of Section 2332a carries with it a statutory maximum of life imprisonment, and a violation of Section 2384 carries with it a statutory maximum of 20 years imprisonment. The two counts against the defendant of violations of Section 924(c) carry with them a mandatory minimum of 25 years imprisonment. Assuming the defendant has no prior criminal history, according to the United States Sentencing Guidelines, it would appear that the defendant faces a sentence of 360 months to life imprisonment based solely on a conviction for violating Section 2332a. *See* U.S.S.G. § 2M6.1.

As the magistrate judge observed, the Government has "strong" evidence to establish the defendant's guilt and it is doubtful that "the standard conditions of release would serve to dissuade the [d]efendant from pursuing the aims of the criminal enterprise, or to protect the public from the obvious dangers inherent in such pursuit." Det. Order (Doc. No. 56) at 1 and 3.

Some of the evidence demonstrating that the defendant poses a danger to the community is detailed above.  In summary, the defendant is a leader and an active participant in an organization that is advocating and planning for violence against the "brotherhood"–the term used by the HUTAREE for local, state, and Federal law enforcement.  As noted above, the defendant has been a regular participant in the training being conducted to prepare for these acts

of violence. He serves as an explosives and tactics trainer for the HUTAREE.  In this role, he taught and demonstrated the use of destructive devices intending or knowing that the information would be used for, or in furtherance of, a Federal crime of violence.  The defendant was present during discussions regarding killing law enforcement officers and he was present during the planning and training for the April 2010 operation during which anyone who might stumble upon the operation might be killed.

In our view, these facts demonstrate that the defendant is committed to the HUTAREE's criminal objectives and poses a danger to the community and that no condition or conditions of release will reasonably assure the safety of the community.

**C. Defendant is a Flight Risk**

In our view, these acts by the defendant establish that the defendant is not only a serious danger to others and the community, but the defendant also poses a flight risk.  In considering whether the defendant is a flight risk, it is important for the court to keep in mind the serious nature of the charges and the potential penalties which themselves create an incentive to flee.  Moreover, the defendant and his HUTAREE associates have demonstrated a disrespect and disregard for lawful authority.  This deep seated lack of respect for lawful authority calls into question whether the defendant will abide by any conditions of release or any requirements to appear at future court proceedings.

The defendant has been planning for and training to engage in a violent conflict with law enforcement and has participated in measures intended to allow for him and other HUTAREE

members to provide for themselves upon the onset of the conflict.  These measures have included stockpiling food and other supplies, and preparing bunkers and other means of concealing these supplies.  It is also important to consider Joshua Stone's immediate actions in response to law enforcement intervention. Upon learning of the arrest of his father, the defendant, and other HUTAREE members, and fearing his own arrest, Joshua Stone attempted to carry out the planned HUTAREE response to law enforcement–flee, issue alerts, rally other militia, gather together with like-minded individuals, proceed to a "rally point", arm yourselves, and prepare to engage law enforcement. Fortunately, Joshua Stone, like the defendant and other HUTAREE members, surrendered when faced with overwhelming force.

In our view, these facts demonstrate that the defendant poses a risk of flight and that no condition or conditions will reasonably assure the defendant's appearance as required.

## CONCLUSION

The defendant has demonstrated that he is a flight risk and a danger to the community, and that he is capable of taking steps to thwart law enforcement. No condition or combination of conditions of release can prevent the defendant from doing so again and with potentially deadly consequences.

For all the foregoing reasons, the government respectfully requests that the defendant's motion be denied at this time, and respectfully requests that the Court conduct a *de novo* detention hearing to determine whether any "condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community."

                                    Respectfully submitted,

                                    BARBARA L. MCQUADE
                                    United States Attorney

| s/Ronald W. Waterstreet | s/Joseph L. Falvey, Jr. |
|---|---|
| RONALD W. WATERSTREET | JOSEPH L. FALVEY, JR. |
| Assistant United States Attorney | Assistant United States Attorney |
| 211 West Fort Street, Ste. 2001 | 211 West Fort Street, Ste. 2001 |
| Detroit, MI 48226 | Detroit, MI 48226 |
| (313) 226-226-9593 | (313) 226-9610 |
| | Bar No.: P51171 |

Dated: April 12, 2010

## CERTIFICATE OF SERVICE

I hereby certify that on April 12, 2010, I electronically filed the foregoing document with the Clerk of the Court using the ECF system which will send notification of such filing to the following:

    Richard Helfrick, Esq.

    s/Joseph L. Falvey, Jr.
    JOSEPH L. FALVEY, JR.
    Assistant United States Attorney
    211 West Fort Street, Ste. 2001
    Detroit, MI 48226
    (313) 226-9610
    E-mail: joseph.falvey@usdoj.gov
    Bar No.: P51171