UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,

v.

        Case No. 10-20123
        Honorable Victoria A. Roberts
        Honorable Magistrate Judge Paul Komives

DAVID STONE, JR., et al.,

        Respondent.

_____/

**REPLY BRIEF TO GOVERNMENT'S RESPONSE TO
MOTION TO DISMISS INDICTMENT**

**I.    The government's assurance that it "will fill in the details at trial" cannot save the fundamentally flawed Indictment, which charges seditious conspiracy based on an alleged plot that does not involve the use of any force – much less imminent force – against the United States government.**

The government concedes that Counts 1 thru 7 hinge on the charge of seditious conspiracy. G.Br. 3-5.[1] While it tries its best to characterize defendant's motion to dismiss as a challenge to the sufficiency of the evidence, the question before this Court is whether the charging document contains a valid charge of seditious conspiracy. Viewed objectively, if the conduct alleged does not constitute a violation of the Federal statute charged, the indictment "must be dismissed as a matter of law." *United States v. Alkhabaz*, 104 F.3d 1492, 1496 (6th Cir. 1997); *United States v. Baker*, 890 F.Supp. 1375, 1382 (E.D. Mich. 1995). Here, the Indictment is invalid on three different legal grounds**:**

The acts of force that comprise the plan alleged in the Indictment as the means to

---

[1] The conspiracy to use weapons of mass destruction count utilizes the same overarching agreement, objective, and means as the seditious conspiracy count. In the government's words: "Count Two incorporates by reference the general allegations and the allegations of Count One [Seditious Conspiracy], which provide a factual outline of the defendants' conspiracy to use weapons of mass destruction." G.Br. 4.

accomplish the charged objective: (1) do not involve force against the United States government; (2) do not involve the use of force "while the United States government was [to be] actually engaged in an attempt" to assert its authority or enforce its laws; and (3) do not purport to involve "imminent lawless action" against the United States. *Baldwin v. Franks*, 120 U.S. 678 (1852); *Anderson v. United States*, 273 F. 20, 25-27 (8th Cir. 1921); *Herndon v. Lowry*, 301 U.S. 242 (1937); *Brandenburg v. Ohio*, 395 U.S. 444, 449 (1969).  The applicability of *Brandenburg* is dealt with in part II below.

    The first three cases cited above all involved indictments alleging the intent to use force against the government; but the charges were deemed invalid due to the mismatch of the claimed objective with the charged "means."  The government's only response to this on-point Supreme and Circuit Court authority is that the Indictment alleges "a conspiracy to oppose by force the United States government" and "describes the manner and means in some detail," with the caveat that "[m]ore details will be filled in" at trial.  G.Br. 18.  What it leaves out, is the fact that the manner and means describe a local plot, involving a local officer, and a local battleground.  The Indictment is invalid as a matter of law because "[s]edition against the United States is not a local offense."  *Commonwealth of Pennsylvania v. Nelson*, 350 U.S. 497, 505 (1956).  The government's assurance that it will "fill in" the details at trial is inapposite to the issue before this Court. Because the Indictment fails to allege that force was to be used against the U.S. government, while the U.S. government was asserting its authority, Counts 1-7 of the Indictment – all of which are premised on the theory of seditious conspiracy – must be dismissed.

II. **The *Brandenburg* standard applies in this case because the seditious conspiracy charge is premised on the expressive content of the defendants' speech and training, as well as the defendants' mere assembly and association with other militia members. Because the "imminence" test operates as the "addition of an element" to a statute, and the government does not allege any "imminent" action against the United States government, Counts 1-7 of the Indictment should be dismissed.**

    A.    The First Amendment is the core issue in this case – which involves charges, speech, assemblies, and associations that are all inherently political.

The government argues that a charge of seditious conspiracy "has no direct bearing on any protected First Amendment interest." G. Br. at 10-11.  This is not only incorrect, it overlooks the purpose and history of the right to freedom of expression, which was "fashioned to assure unfettered interchange of ideas for the bringing about of political and social changes desired by the people." *Connick v. Myers*, 461 U.S. 138, 145 (1983).  The oppressive enforcement of sedition laws by the Crown in England was, in large part, the genesis of the American Revolution, the Declaration of Independence and the First Amendment.  The crimes of seditious conspiracy and insurrection are inherently political, and as a result, these time-worn "formulae for the repression of expression... can claim no talismanic immunity from... the First Amendment." *New York Times Co. v. Sullivan*, 376 U.S. 254, 269 (1964).  In fact, it was the fear-driven passage of the Sedition Act of 1798, and the subsequent political persecution that masqueraded as enforcement, which "first crystallized a national awareness of the central meaning of the First Amendment." *Id*. at 273-274.

Throughout history, sedition and conspiracy charges have proven to be a governmental bludgeon used to hammer into submission the rights to free expression, association, and

assembly.[2] The speech involved here - while offensive - is precisely the type of speech that requires First Amendment protection. Free speech "best serves its higher purpose when it induces a condition of unrest, creates dissatisfaction with conditions as they are, or even stirs people to anger." *Terminiello v. City of Chicago*, 337 U.S. 1, 4 (1949).

The First Amendment states that "Congress shall make no law abridging the freedom of speech[.]" U.S. Const. I. Even speech that a "vast majority of its citizens believe to be... fraught with evil" cannot be punished unless there is a clear and present danger. *Whitney v. California*, 274 U.S. 357, 374 (1927). The First Amendment also protects the penumbra of rights that are essential to freedom of expression, such as the right of association and assembly. *NAACP v. State of Ala. ex rel. Patterson*, 357 U.S. 449, 460-461 (1958). Government action which "may have the effect of curtailing the freedom to associate is subject to the closest scrutiny." *Id.*; *in accord Elfbrandt v. Russell*, 384 U.S. 11, 19 (1966).

The founders of this country knew from personal experience that attempts to stamp-out anti-government expression in times of fear would ultimately increase opposition, not diminish

---

[2] These include: the Sedition Act of 1798; the Palmer Raids in 1919-1920 against so-called "anarchist" group members; the Communist "subversives" witch hunt in the '40s and '50s, and the despotic governmental actions against anti-war protesters during the Vietnam War (including the John Sinclair/Pun Plamondon case here in the Eastern District of Michigan, and the Chicago 7 case). Supreme Court Justice William Douglas' concurrence in the case involving Sinclair's White Panther party is a fitting reminder of the eternal vigilance necessary for freedom of expression and freedom from government intrusion to thrive – even in these periodic paroxysms of fear: "[W]e are currently in the throes of another national seizure of paranoia, resembling the hysteria which surrounded the Alien and Sedition Acts, the Palmer Raids, and the McCarthy era. Those who register dissent... are subjected to scrutiny by grand juries, by the FBI, or even the military. Their associates are interrogated, their homes are bugged and their telephones are wiretapped. They are befriended by secret government informers [and] [t]heir patriotism and loyalty are questioned." *United States v. U.S. Dist. Ct., E. Dist. Of Mich., Southern Division*, 407 U.S. 297, 329-330 (1972).

it. For, as Louis Brandeis wrote, "it is the function of free speech to free the people from the bondage of irrational fears... Those who won our independence by revolution were not cowards. They did not fear political change. They did not exalt order at the cost of liberty... They eschewed silence coerced by law – the argument of force in its worst form." *Whitney*, 274 U.S. at 375. In sum, the government's argument that the charge of seditious conspiracy has no "direct bearing" on the First Amendment is extremely misguided.

      B.      The government's theory of the First Amendment turns established Supreme Court jurisprudence on its head.

The government argues that criminal statutes prohibiting expression are presumptively unhindered by the First Amendment; but if the punished expression involves "advocacy, discussion, or publication of ideas" then it *may* receive limited protection under *Brandenburg*. G.Br. 14-15. The government is not just wrong; it has turned First Amendment jurisprudence upside down.[3]

The Supreme Court has made it clear that when a criminal statute is content-based, on its face or as applied, the law is "presumptively invalid." *R.A.V. v. City of St. Paul, Minnesota*, 505 U.S. 377, 382 (1992). Only if the speech falls into one of the categories the Court has determined to involve "slight social value" is it even "proscribable." *Id*. at 387. These categories are: obscenity; defamation; fighting words; true threats; and advocacy that is intended and likely

---

[3] As a preliminary matter, this Court should note that the Indictment in this very case alleges that the defendants "advocated" and "discussed" the crimes charged. R. 175, First Superseding Indictment, p. 2, 6. So even under the government's groundless First Amendment theory, *Brandenburg* applies. The language used in the Indictment provides a compelling object lesson on the blurred distinctions between discussion, advocacy, and conspiracy without *Brandenburg*'s bold demarcation between expression and crime: whether the speech is "directed to inciting or producing imminent lawless action and... likely to incite or produce such action." *Brandenburg v. Ohio*, 395 U.S. 444, 449 (1969*)*.

to incite or produce imminent lawless action. *Id*. at 382; *Virginia v. Black*, 538 U.S. 343, 359-360 (2003).[4]

As noted First Amendment scholar Eugene Volokh has emphasized with regard to expression and conspiracy: "Agreements literally involve nothing but speech. A conspiracy is formed not by the agreement inside each conspirator's head, which co-conspirators and jurors usually won't learn about, but by the *expression* of that agreement to the co-coconspirators." Eugene Volokh, *Speech as Conduct: Generally Applicable Laws, Illegal Courses of Conduct, "Situation Altering Utterances," and the Uncharted Zones*, 90 Cornell L. Rev. 1277, 1335, note 295 (2005). Even if the agreement is expressed without words, and through acts alone, those acts constitute "expressive conduct" under the First Amendment. *Id*.; *in accord Texas v. Johnson*, 491 U.S. 397, 409 (1989). Whether the expression involved in a standard conspiracy case falls into one of the categories of lesser protection is beside the point here. This case involves fundamental, highly-valued speech, association, and assembly addressed to "political and social change" that is desired or anticipated by the people. *Connick v. Myers*, 461 U.S. 138, 145 (1983). Though it is characterized by the government as "seditious," this form of expression is not only valuable, it is the jealously-guarded foundation of the First Amendment. *Id*.

      C.    The *Brandenburg* standard applies to seditious conspiracy.

According to the government, the *Brandenburg* line of cases do not extend to "conspiracies" to "commit" illegal acts. G.Br. at 14, 17. The overwhelming authority discussed below indicates that the government is wrong.

---

[4] The government makes no claim that the speech involved in this case constituted "true threats" and, in fact, could not do so. See *Black*, 538 U.S. at 359-360.

*Brandenburg* unmistakably insists that any limit on "expression" be grounded in a realistic assessment of harm based on "careful consideration of the actual circumstances surrounding such expression." *Texas v. Johnson*, 491 U.S. 397, 409 (1989). To be sure, for the offenses of "attempt, incitement, solicitation and **conspiracy**," the Supreme Court has interpreted *Brandenburg* as providing the vital distinction "between words and deeds, [and] between ideas and conduct." *Ashcroft v. Free Speech Coalition*, 535 U.S. 234, 253-254 (2002)(emphasis added).[5] The *Ashcroft* opinion, in invoking *Brandenburg*, also hearkened back to the blueprint for that decision, contained in Justice Brandeis' concurrence in *Whitney*. Namely, that the clear and present danger test was the difference "between advocacy and incitement, between preparation and attempt, and between assembling and **conspiracy**." *Whitney*, 274 U.S. at 376 (emphasis added).

"The government may not prohibit speech because it increases the chance of an unlawful act 'at some indefinite future time.'" *Ashcroft*, *id*. at 253 *quoting Hess v. Indiana*, 414 U.S. 105, 108 (1973). The "attempts of domestic organizations to attack and subvert the existing structure of government cannot be, in and of themselves, a crime" unless the *Brandenburg* standard of imminence is met. *United States v. Sinclair*, 321 F.Supp. 1074, 1979 (E.D. Mich. 1971) *aff'd*, 407 U.S. 297 (1972)(defendants were charged with conspiracy to destroy government property and destruction of government property in connection with the dynamite bombing of a CIA

---

[5] The Supreme Court's forceful assertion regarding the applicability of *Brandenburg* came three years after *United States v. Rahman*, 189 F.3d 88 (2d Cir. 1999), the circuit court case upon which the government relies. Moreover, as explained with precision in defendant's Brief in Support of his Motion to Dismiss, the *Rahman* appeal did not involve any dispute regarding "imminence." Any comparison between the instant case and *Rahman* is far-fetched.

office in Ann Arbor, Michigan). As applied, statutes affecting the "equally fundamental" rights of assembly and association must observe the distinction between mere presence, and presence that is intended and likely to produce imminent lawless action. *Brandenburg*, 395 U.S. at 449.

"When a generally applicable law is content-based *as applied* – when speech triggers the law because of the harms that may flow from what the speech says – the law should be subject to full-fledged First Amendment scrutiny." Volokh, *id*. at 1284 (emphasis in original). Counsel for defendant agrees that the government's interest in avoiding violent overthrow is substantial. But the government's decision to charge a crime that Congress has an interest in preventing does not immunize the prosecution or the statute from the First Amendment. The question of whether expression crosses the line from advocacy to crime is not and cannot be resolved based on the whims of the government's charging decision or its characterization of the speech involved.[6]

"The question in every case is whether the words used are used in such circumstances and are of such a nature as to create a clear and present danger that they will bring about the substantive evils that Congress has a right to prevent." *Schenk v. United States*, 249 U.S. 47, 57 (1919); *in accord Honey v. Goodman*, 432 F.2d 333, 338 (6th Cir. 1970)(holding that government may punish speech pursuant to criminal statutes *if* the words "are of such a nature as to create a clear and present danger that they will bring about" the charged crime); *see also United States v. Alvarez*, 617 F.3d 1198, 1215 (9th Cir. 2010)(Court finds Stolen Valor Act, proscribing "falsely verbally claiming to have received the Congressional Medal of Honor," violated the First Amendment as applied; citing *Schenk*, *id*. and *Brandenburg*, *id*.). In other words, whether

---

[6] The Supreme Court has repeatedly denounced government attempts to "foreclose the exercise of constitutional rights by mere labels." *See NAACP v. Button*, 371 U.S. 415, 429 (1963); *New York Times Co. v. Sullivan*, 376 U.S. 254, 269 (1964).

analyzed on its face or as applied, the enactment of the statute "cannot alone establish the facts which are essential to its validity." *Whitney*, 274 U.S. at 376.

The government acknowledges the holding in *Herndon v. Lowry*, 301 U.S. 242 (1937) but fails to distinguish it.  The government does not explain how a statute charging attempt to incite insurrection ("combined resistance to the lawful authority of the State.. manifested by acts of violence") was found to be unconstitutional, as applied, due to the absence of imminence, but here, a more inchoate offense – seditious conspiracy – would not, according to the government, implicate the First Amendment at all.  This omission speaks volumes, because there is no reasonable explanation available.

The government claims that the decision in *Hartzel v. United States*, 322 U.S. 680 (1944) was a prosecution for a "pure advocacy" crime.  G.Br. 16.  This characterization is grossly inaccurate. The defendants in *Hartzel* were charged with "willful obstruct[ion]" of recruitment and enlistment, "willful attempt" to cause mutiny and disloyalty in the United States military, and "conspiracy to commit" these substantive offenses.  *Hartzel*, 322 U.S. at 681-682, 687.  In other words, they were charged with conspiracy, attempt, and the commission of the substantive offense.  Their convictions on each of these counts were reversed as violative of the First Amendment because there was no clear and present danger. The fact that the government, now, long after the fact, characterizes the speech used as "advocacy" is irrelevant.  This is yet another case that thoroughly rebuts the government's argument that the charge determines the applicability of the First Amendment or *Brandenburg*.

The government continues to undercut its own argument when it attempts to distinguish the *Hess* case.  As the government concedes, the Court found that the speech did **not** constitute

advocacy.  Under the government's theory, this would be presumptively proscribable speech and *Brandenburg* would not apply.  But of course, *Brandenburg* did apply.  More importantly, the charge was disorderly *conduct*, a crime in the "action" category (and certainly not an inchoate offense like conspiracy).  The upshot of *Hess* was reaffirmed by the Supreme Court in the *Ashcroft* case: "The government may not prohibit *speech* because it increases the chance of an unlawful act 'at some indefinite future time.'" *Ashcroft*, *id*. at 253 *quoting Hess v. Indiana*, 414 U.S. 105, 108 (1973)(emphasis added).

The *Brandenburg* test was also recently applied in a case charging the defendants with conspiracy to commit interstate stalking, conspiracy to use a telecommunications device to abuse, threaten, and harass, and conspiracy to violate the Animal Enterprise Protection Act (AEPA). *United States v. Fullmer*, 584 F.3d 132, 154 (3rd Cir. 2009); *see also United States v. Phipps*, 595 F.3d 243, 247 (5th Cir. 2010)(applying *Brandenburg* to mail-wire fraud, aiding and abetting, and corrupt endeavoring to obstruct internal revenue laws); *United States v. Kelly*, 864 F.2d 569, 577 (7th Cir. 1989)(same).  Similarly, the "imminence" test has invalidated convictions for conspiracy to "injure, oppress, threaten or intimidate" in order to violate another's civil rights (*United States v. Lee*, 6 F.2d 1952 (8th Cir. 1993)); solicitation (*People v. Salazar*, 362 N.W.2d 913, 917-918 (Mich. Ct. App. 1985)); conspiracy to defraud the United States government (*United States v. Dahlstrom*, 713 F.2d 1423 (9th Cir. 1983)); and conspiracy to incite violence against the United States government (*United States v. Silverman*, 248 F.2d 671 (2nd Cir. 1957)).

In sum, the argument that *Brandenburg* does not apply to conspiracies to commit crimes should be rejected because it is contradicted by a cascade of authoritative First Amendment jurisprudence – and the government offers no significant authority to counter these holdings.

> D.   The Court must dismiss the Indictment if, in the light most favorable to the government, the allegations of seditious conspiracy fail to establish imminence pursuant to *Brandenburg*, for the Supreme Court has stated that the test operates as "the addition of an element" in order to render a statute constitutionally sound as applied to a particular defendant.

The application of the First Amendment is both a legal question for the district court and a factual question for the jury.  *Schaefer v. United States*, 251 U.S. 466, 483 (1920); *United States v. Freeman*, 761 F.2d 549, 551 (9th Cir. 1982). "If the words were of such a nature and were used under such circumstances that men, judging in calmness, could not reasonably say that they created a clear and present danger that they would bring about the evil which Congress sought and had a right to prevent, then it is the duty of the trial judge to withdraw the case from the consideration of the jury[.]"  *Schaefer*, *id*. at 483.

The Supreme Court has determined that, in practice, *Brandenburg*'s imminence requirement operates as "the addition of an element... to the definition of a criminal offense in order to narrow its scope" in accord with the Constitution.  *Ring v. Arizona*, 536 U.S. 584, 606-607 (2002).  The government has the burden of proving that speech and/or association is unprotected by the First Amendment.  *Texas v. Johnson*, 491 U.S. 397, 409 (1989); *Healy v. James*, 408 U.S. 169, 186 (1972).

The Supreme Court has reaffirmed that "the government may not prohibit speech because it increases the chance of an unlawful act 'at some indefinite future time[,]'" and that *Brandenburg* provides the vital distinction "between words and deeds, [and] between ideas and conduct" for the offenses of "attempt, incitement, solicitation and conspiracy." *Ashcroft v. Free Speech Coalition*, 535 U.S. 234, 253-54 (2002) *quoting Hess v. Indiana*, 414 U.S. 105, 108

(1973).  The government overlooks the critical fact that *Brandenburg* did not merely find the Ohio Syndicalism statute *facially* unconstitutional because it explicitly criminalized "advocacy" of violence and terrorism without any distinction for the speech's proximity to criminal conduct. *Id*. at 448.  The Court also found the statute unconstitutional *as applied* to the government's indictment because the charging instrument failed to "refine" or "distinguish" the speech charged as amounting to an "incitement to imminent lawless action."  *Id*. at 448-449.

If the government fails to properly plead an offense that implicates the First Amendment, the court may dismiss the indictment.  *Brandenburg*, 395 U.S. at 447; *Dennis v. United States*, 341 U.S. 494, 513 (1951); *United States v. Baker*, 890 F.Supp. 1375, 1382 (E.D. Mich. 1995).  Here, the Indictment fails to allege that the defendants were going to use any force, much less imminent force, against the United States government.  Both are necessary elements of an indictment for seditious conspiracy.  As a result, the Indictment fails to allege the offense of seditious conspiracy and the statute is unconstitutional as applied to the defendants in this case.

## Conclusion

For all these reasons, David Stone, Jr. respectfully requests that this Honorable Court dismiss counts 1-7 in the First Superseding Indictment.

                              Respectfully submitted,

                              Legal Aid & Defender Association
                              **FEDERAL DEFENDER OFFICE**

                              s/ Richard M. Helfrick
                              E-mail: Richard_Helfrick@fd.org

                              s/ Todd A. Shanker
                              E-mail: Todd_Shanker@fd.org
                              Counsel for David Stone, Jr.
                              613 Abbott St., 5th Floor
                              Detroit, MI 48226
Dated: November 19, 2010          (313) 967-5542

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

                                      Case No. 10-20123
v.                                 Honorable Victoria A. Roberts

DAVID STONE, JR., et al.,

    Respondent.
_____/

**CERTIFICATE OF SERVICE**

      I hereby certify that on November 19, 2010, I electronically filed the foregoing Reply Brief with the Clerk of the Court using the ECF system, which will send notification of such filing to the following:

                        Sheldon N. Light
                        Joseph Falvey
                        Jonathan Tukel
                        Assistant U.S. Attorneys

                        Respectfully submitted,

                        Legal Aid & Defender Association
                        **Federal Defender Office**

                        <u>s/ Todd A. Shanker</u>
                        613 Abbott St., 5th Floor
                        Detroit, MI 48226
                        Phone:  (313) 967-5542