UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


UNITED STATES OF AMERICA,

       Plaintiff,

                                  CASE NO. 2:10-CR-20123

v.                            JUDGE VICTORIA A. ROBERTS

                                  MAGISTRATE JUDGE PAUL KOMIVES

DAVID BRIAN STONE, et al.,

       Defendants.

_____/

**REPORT AND RECOMMENDATION ON DEFENDANT'S MOTION TO DISMISS
(docket #198, joined in by docket #200, 201, 203, 205, 207, 210, 212, and 214)**

I.     RECOMMENDATION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1
II.    REPORT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1
     A.    *Background* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1
     B.    *Legal Standard* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
     C.    *Analysis* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
          1.    *Sufficiency of the Indictment* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6
              a. Seditious Conspiracy Charge Under § 2384 . . . . . . . . . . . . . . . . . . . . . . . . . 6
              b. Conspiracy to Use a Weapon of Mass Destruction Under § 2332a . . . . . . . . . . . . 11
          2.    *First Amendment* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13
              a. Brandenburg is Inapplicable . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13
              b. Even If Applicable, Brandenburg Does Not Require Dismissal . . . . . . . . . . . . . . . 20
     D.    *Conclusion* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21
III.   NOTICE TO PARTIES REGARDING OBJECTIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

                    *       *       *       *       *

I.     <u>RECOMMENDATION</u>: The Court should deny the motion of defendant David Stone, Jr.,

joined in by the remaining defendants, to dismiss the Indictment (docket #198, joined in by docket

#200, 201, 203, 205, 207, 210, 212, and 214).

II.    <u>REPORT</u>:

A.    *Background*

       On March 29, 2010, the Grand Jury returned a multi-count indictment against nine

defendants: David Brian Stone, David Brian Stone, Jr., Joshua Matthew Stone, Tina Mae Stone,

Joshua John Clough, Michael David Meeks, Thomas William Piatek, Kristopher T. Sickles, and Jacob J. Ward. The Grand Jury returned a First Superseding Indictment on June 2, 2010. In general, the Indictment alleges that defendants are members of the "HUTAREE," characterized as an anti-government organization. Count One of the Indictment charges all nine defendants with seditious conspiracy in violation of 18 U.S.C. § 2384. Count Two charges all nine defendants with conspiracy to use a weapon of mass destruction in violation of 18 U.S.C. § 2332a(a)(2). Count Three charges defendants David Brian Stone and David Brian Stone, Jr., with teaching or demonstrating the use of explosive materials in violation of 18 U.S.C. § 842(p)(2). Counts Four and Five charge all nine defendants with carrying, using, or possessing a firearm during and in relation to a crime of violence in violation of 18 U.S.C. § 924(c)(1). Counts Six and Seven charge two additional § 924(c) counts against all defendants except for defendants Tina Mae Stone and Piatek. Counts Eight and Nine charge defendant David Brian Stone with possession of a machine gun in violation of 18 U.S.C. §§ 922(o), 924(a)(2). Counts Ten and Eleven charge the same against defendant Joshua Stone, and Count Twelve charges the same against defendant Clough. Finally, Counts Thirteen through Fifteen charge defendants David Brian Stone, David Brian Stone, Jr., and Joshua Stone with possession of an unregistered firearm in violation of 26 U.S.C. §§ 5841, 5861(d), 5871.

The focus of the instant motion is the seditious conspiracy charge alleged in Count One. In this count, the government charges that defendants "knowingly conspired, confederated, and agreed with each other and with other persons known and unknown to the Grand Jury, to oppose by force the authority of the Government of the United States, and to prevent, hinder, and delay by force the execution of United States law, including federal laws regarding the sale, purchase, receipt, possession, and use of firearms and destructive devices." 1st Superseding Indictment, Count One,

¶ 2 [hereinafter "Indictment"]. The Indictment then alleges the means and methods used by defendants to further the objects of the conspiracy. Specifically, the Indictment alleges that "[t]he HUTAREE's general plan was to commit some violent act to draw the attention of law enforcement or government officials, in order to prompt a response by law enforcement," such as by killing a law enforcement officer. *Id*., ¶ 3. The Indictment further alleges that once such a law enforcement response had been provoked, "HUTAREE members would retreat to one of several 'rally points' where the HUTAREE would conduct operations against the government and be prepared to defend in depth with trip-wired and command detonated anti-personnel IEDs [(improvised explosive devices)], ambushes, and prepared fighting positions." *Id*., ¶ 4. Such a confrontation, the Hutaree believed, "would be a catalyst for a more widespread uprising against the United States Government." *Id*. The Indictment alleges that the "conspirators planned and trained for armed conflict against local, state, and federal law enforcement" through numerous means, including acquiring weapons, engaging in military-style training, planning the execution of a law enforcement officer, obtaining information about and materials for the construction of IEDs, engaging in reconnaissance exercises and planning for the killing of anyone who happened upon their exercises, and attempting to initiate a Hutaree protocol to engage law enforcement in an armed conflict following the arrest of several Hutaree members. *Id*., ¶ 5. The weapons of mass destruction, explosive device, and § 924(c)(1) charges alleged in Counts Two through Seven are derivative of the seditious conspiracy count alleged in Count One.

On September 21, 2010, defendant David Brian Stone filed this motion to dismiss Counts One through Seven of the First Superseding Indictment. The motion has been joined in by all defendants. Defendants argue that the government's allegations fail to set forth a valid charge of

seditious conspiracy or conspiracy to obtain a weapon of mass destruction, and that the application

of the seditious conspiracy statute to these defendants is unconstitutional under the Free Speech

Clause of the First Amendment. The government filed a response to the motion on November 5,

2010. The government argues that the First Superceding Indictment is facially valid and that

defendants' arguments go to the factual sufficiency of the charges, a matter inappropriate for

resolution on a pretrial motion to dismiss. Defendants filed a reply on November 19, 2010. For the

reasons that follow, the Court should deny defendants' motion to dismiss.[1]

B.  *Legal Standard*

Rule 12(b) provides, in relevant part, that "[d]efenses and objections based on defects in the

indictment or information" must be raised prior to trial through a motion to dismiss. FED. R. CRIM.

P. 12(b)(2). However, it is well established that "[a]n indictment returned by a legally constituted

and unbiased grand jury, . . . if valid on its face, is enough to call for trial of the charges on the

merits." *Costello v. United States* 350 U.S. 359, 363 (1956). A court may not pre-try the case, and

an indictment is not subject to dismissal on the basis that the evidence supporting the indictment is

insufficient or on the basis that the government will not be able to prove its case at trial. *See United

States v. Powell*, 823 F.2d 996, 1000-01 (6th Cir. 1987). "Generally, the strength or weakness of

the government's case, or the sufficiency of the government's evidence to support a charge, may not

be challenged by a pretrial motion." *United States v. Hall*, 20 F.3d 1084, 1087 (10th Cir. 1994).

"An indictment should be tested solely on the basis of the allegations made on its face, and such

allegations are to be taken as true." *Id*. (citing *United States v. Sampson*, 371 U.S. 75, 78-79 (1962).

---

[1]The parties have thoroughly briefed the issues before the Court, and this recommendation on defendants' dispositive motion is subject to *de novo* review by the District Judge, *see* 28 U.S.C. § 636(b)(1). Thus, as is my usual practice in cases of dispositive motions referred to me, I submit this Report on the basis of the parties' briefs.

"'An indictment is generally deemed sufficient "if it states the offense using the words of the statute itself, as long as the statute fully and unambiguously states all the elements of the offense.'" *United States v. Middleton*, 246 F.3d 825, 841 (6th Cir. 2001) (quoting *United States v. Monus*, 128 F.3d 376, 388 (6th Cir.1997). In determining whether the indictment is sufficient, a court considers "first, whether the indictment 'contains the elements of the offense charged and fairly informs a defendant of the charges against which he must defend, and second, [whether it] enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense.'" *Id*. at 841-42 (quoting *Monus*, 128 F.3d at 388) (alteration in original); *see also*, *United States v. Schaffer*, 586 F.3d 414, 422 (6th Cir. 2009). More specifically, "[a] conspiracy indictment is valid if it embraces the essential elements of the conspiracy charged, adequately apprises the defendant of the charges so that the defendant may intelligently prepare his or her defense and provides protection against future prosecutions." *United States v. Craft*, 105 F.3d 1123, 1127 (6th Cir. 1997).

C.      *Analysis*

As the above standard indicates, the question before the Court is limited. The question is not whether the government will be able to prove a valid case at trial. The only question before the Court is whether the allegations in the Indictment, taken as true, are sufficient to plead the crimes charged and apprise the defendants of the nature of the charges. As restated in their reply, defendants argue that the seditious conspiracy charge fails on three grounds: "The acts of force that comprise the plan alleged in the Indictment as the means to accomplish the charged objective: (1) do not involve force against the United States government; (2) do not involve the use of force 'while the United States government was [to be] actually engaged in an attempt' to assert its authority or enforce its laws; and (3) do not purport to involve 'imminent lawless action' against the United

States." Reply, at 1-2. The first two arguments go to the sufficiency of the Indictment under the seditious conspiracy statute, while the third raises a First Amendment challenge to the charge.

1.  *Sufficiency of the Indictment*

a.  *Seditious Conspiracy Charge Under § 2384*

The seditious conspiracy statute provides, in its entirety:

> If two or more persons in any State or Territory, or in any place subject to the jurisdiction of the United States, conspire to overthrow, put down, or to destroy by force the Government of the United States, or to levy war against them, or to oppose by force the authority thereof, or by force to prevent, hinder, or delay the execution of any law of the United States, or by force to seize, take, or possess any property of the United States contrary to the authority thereof, they shall each be fined under this title or imprisoned not more than twenty years, or both.

18 U.S.C. § 2384. The elements of the offense, as charged in the Indictment, are simply (1) a conspiracy, (2) to either (a) oppose by force the authority of the United States government or (b) prevent, hinder, or delay the execution of any law of the United States. *See United States v. Khan*, 461 F.3d 477, 487 (4th Cir. 2006). Defendants do not argue that the Indictment fails to charge the conspiracy element; rather, they contend that the Indictment fails to properly allege that they conspired either to oppose by force the authority of the United States government or to prevent, hinder, or delay the execution of any laws of the United States.

Defendants first argue that although the Indictment alleges generally "a conspiracy to oppose by force the United States government," the actual "manner and means describe a local plot, involving a local officer, and a local battleground." Reply, at 2. Because "[s]edition against the United States is not a local offense," *Pennsylvania v. Nelson*, 350 U.S. 497, 505 (1956), defendants argue, the Indictment fails to allege a violation of § 2384.[2] The Court should disagree. It is true that

---

[2]The modern seditious conspiracy statute set forth in § 2384 was first enacted at the onset of the Civil War. Similar to § 2384, that statute made it a crime, *inter alia*, for "two or more persons" to

the initial step in defendants' alleged plan was the assassination of a local law enforcement official. This first step, however, is alleged to have been a means toward the group's ultimate goal of provoking an armed confrontation with local and federal law enforcement officials. And there can be no doubt that conspiring to deliberately provoke an armed conflict with federal law enforcement officials constitutes a conspiracy to "oppose by force the authority" of the United States and to "by force . . . prevent, hinder, or delay the execution of any law of the United States." 18 U.S.C. § 2384. It may be that the evidence at trial will establish nothing more than a local plot against local law enforcement officials, but the indictment alleges more than this. "Of course, none of these charges have been established by evidence, but at this state of the proceedings the indictment must be tested by its sufficiency to charge an offense." *Sampson*, 371 U.S. at 78-79.

For this reason, *Baldwin v. Franks*, 120 U.S. 678 (1887), and *Anderson v. United States*, 273 F. 20 (8th Cir. 1921), upon which defendants rely, are inapposite.[3] In *Baldwin*, the defendant was

_____

"conspire together to overthrow, or to put down, or to destroy by force, the Government of the United States, or to levy war against the United States, or to oppose by force the authority of the Government of the United States; or by force to prevent, hinder, or delay the execution of any law of the United States." 12 Stat. 284 (July 31, 1861). The statute was expanded, but retained this language, in an effort to enforce the Fourteenth Amendment during Reconstruction. *See* 17 Stat. 13 (Apr. 20, 1871). In 1909, as part of a general reorganization of the criminal code, the prior statute was repealed and replaced with the language of the rule as it stands today in § 2384, with the exception of the applicable penalty. *See* 35 Stat. 1089, 1153 (1909), codified at 18 U.S.C. § 6 (1940 ed.). Finally, as part of another restyling and reorganization of Title 18, the provision was moved without alteration to its current location in § 2384. *See* Pub. L. No. 80-772, 62 Stat. 808 (June 25, 1948). Thus, with the exception of two amendments to the penalty provision, *see* Pub. L. No. 84-766, 70 Stat. 623 (July 24, 1956); Pub. L. No. 103-322, § 330001(N), 108 Stat. 2148 (Sept. 13, 1994), § 2384 has remained unchanged since its codification in Title 18 in 1909. Because there is a dearth of case law applying § 2384, both defendants and the government rely on cases applying the predecessor statutes, which contained the identical language.

[3]In their argument with respect to the sufficiency of the Indictment, defendants also rely on *Herndon v. Lowry*, 301 U.S. 242 (1937). That case did not involve the federal seditious conspiracy statute, but rather a state law, and the issue in that case was whether the defendants' convictions could be sustained under the First Amendment. *Herndon* is therefore addressed below, in connection with defendants' First Amendment argument.

charged with conspiring to deprive "a class of Chinese aliens" of various rights and privileges, and "by force and arms" driving them from their residences. *Baldwin*, 120 U.S. at 680-81. Turning first to the prong of the sedition statute which prohibits conspiracy to oppose by force the authority of the United States, the Court explained that this provision

> implies force against the government as a government. To constitute an offense under [this] clause, the authority of the government must be opposed; that is to say, force must be brought to resist some positive assertion of authority by the government. A mere violation of the law is not enough; there must be an attempt to prevent the actual exercise of authority.

*Id*. at 693. The defendant had not violated this clause, the Court held, because his "force was exerted in opposition to a class of persons who had the right to look to the government for protection against such wrongs, not in opposition to the government while actually engaged in an attempt to afford that protection." *Id*. Turning to the provision of the statute prohibiting conspiracies to prevent, delay, or hinder the execution of the laws, the Court explained that this "means something more than setting the laws themselves at defiance. There must be a forcible resistance of the authority of the United States while endeavoring to carry the laws into execution." *Id*. Again, the Court found that the statute was not satisfied because the defendant's conspiracy was "for the ill treatment itself, and not for hindering or delaying the United States in the execution of their measures to prevent it. His force was exerted against the Chinese people, and not against the government in its efforts to protect them." *Id*. at 693-94.

Here, unlike *Baldwin*, the government has alleged a conspiracy to oppose by force the United States "government as a government" or delay, hinder, or prevent the "authority of the United States while endeavoring to carry the laws into execution." The government does not allege that defendants merely conspired to violate the law or "set[] the laws themselves at defiance." If the

Indictment alleged only that defendants conspired to murder a local law enforcement official, this case would be akin to *Baldwin*. But the Indictment here alleges more, namely, that this was merely a first step designed to provoke a confrontation with local and federal law enforcement officials for the very purpose of engaging them in an armed conflict and preventing the execution of federal law. *See Baldwin*, 120 U.S. at 693-94 ("[I]f in [the government's] efforts to carry the treaty into effect they had been forcibly opposed by persons who had conspired for that purpose, a state of things contemplated by the statute would have arisen."). If the evidence at trial does not establish this second goal of the conspiracy, then *Baldwin* will require that defendants be acquitted. At this stage of the proceedings, however, the Indictment alleges facts beyond those in *Baldwin* which, if proved at trial, will establish "a state of things contemplated by the statute."

For the same reason *Anderson*, *supra*, is inapposite. In *Anderson*, the defendants were charged with and convicted of, *inter alia*, seditious conspiracy for conspiring to prevent, hinder, or delay the execution of various laws, including the Congressional declaration of war on Germany and related laws relating to conscription. *See Anderson*, 273 F. at 22-24. The indictment charged that the conspirators: prepared and circulated a newspaper calling for strikes and an overthrow of the capitalist system; distributed and read a book advocating the temporary disabling of machinery; distributed various other books calling for sabotage or an overthrow of the capitalist system; circulated a newspaper article critical of the war and advising that any members of the organization joining the military forces would be expelled from the organization; and published a song critical of military enlistment. *See id*. at 24-25. The court, relying on *Baldwin*, explained that to be sufficient the indictment must "charge that the purpose of the conspiracy was the exertion of force against those charged with the duty of executing the law of the United States, or the language used

in the count must be such that from it the inference reasonably follows that that was the purpose and object of the conspiracy[.]" *Id*. at 26. Applying this rule, the court found the indictment insufficient, because as alleged the "force was to be exerted, not against those whose duty it should be to execute the laws, and while attempting to do so, but its application was to be made against industrial and commercial interests by lawless acts during strikes for the purpose of accomplishing alleged socialistic ends in the overthrow and destruction of the present civil compact." *Id*. at 26-27. As explained above, however, unlike in *Anderson* the indictment here charges that defendants conspired to provoke a confrontation with federal officials and use force against them when they attempted to enforce federal law. Thus *Anderson*, like *Baldwin*, is inapplicable here, at least at this stage of the proceedings.

In short, the question before the Court is not whether the government must prove that defendants conspired to oppose by force the United States government as the government, or to prevent, delay, or hinder the execution of federal laws by force. *Baldwin* makes clear that it must do so. Nor is the question whether the government will ultimately be able to prove its case at trial. The only question before the Court is whether the Superceding Indictment, on its face and taken as true, alleges that the defendants committed a conspiracy as defined by § 2384. For the reasons explained above, the Court should conclude that the Superceding Indictment does so. *See Reeder v. United States*, 262 F. 36 (8th Cir. 1919) (indictment sufficient under seditious conspiracy statute which alleged that the defendants conspired "by force to procure arms and ammunition, and to arm themselves with the same, and while armed to offer individual and combined resistance to the authority of the United States and to the enforcement an execution of said act of Congress, proclamation, and regulations . . . ."); *Wells v. United States*, 257 F. 605 (9th Cir. 1919).

### b. *Conspiracy to Use a Weapon of Mass Destruction Under § 2332a*

Defendants' challenge to the weapons of mass destruction charge is, for the most part, derivative of their challenge to the seditious conspiracy charge. Defendants do also argue with respect to this charge that "there is no allegation that any defendants ever accepted, received, or possessed a fake or real WMD, IED, or EFP." Def.s' Br., at 18. Noting that the government alleges only that defendant David Stone, Sr., solicited four IEDs from an undercover agent, and that there is "no allegation that any other defendant knew about this," defendants argue that the Indictment fails to allege a conspiracy. However, defendants fail to explain why the indictment must allege that they knew about defendant David Stone, Sr.'s activities. All that is required is that they agreed to possess WMDs. To be sure, if the only evidence that the government can present at trial is that David Stone, Sr. solicited WMD material without the knowledge of the other defendants, the proof would be insufficient. However, the Indictment alleges an agreement by defendants, and thus properly charges a conspiracy regardless of whether the other alleged conspirators knew of David Stone, Sr.'s activities. Further, "'it is well settled that in an indictment for conspiracy to commit an offense in which the conspiracy is the gist of the crime, it is not necessary to allege with technical precision all the elements essential to the commission of the offense which is the object of the conspiracy.'" *United States v. Abdi*, 498 F. Supp. 2d 1048, 1056 (S.D. Ohio 2007) (quoting *United States v. Branan*, 457 F.2d 1062, 1064 (6th Cir. 1972)).

Defendants also argues that the Indictment is insufficient because it "fails to allege an overt act in furtherance of the conspiracy, such as actually acquiring real or fake WMDS, as required by law." Def.s' Br., at 19. The Indictment does allege, however, that defendant David Stone, Sr., attempted to acquire WMDs or WMD material. Even assuming that the government is required to

show an overt act to prove a conspiracy to violate § 2332a, that requirement is not onerous. The government need show only that "a member of the conspiracy did some act in furtherance of the alleged conspiracy." *United States v. Stone*, 323 F. Supp. 2d 886, 890 (E.D. Tenn. 2004). "The overt act . . . may be that of only a single one of the conspirators and need not itself be a crime," *Braverman v. United States*, 317 U.S. 49, 53 (1942), and "it suffices if . . . the act further[s] the criminal venture." *United States v. Alvarez*, 610 F.2d 1250, 1255 n.5 (5th Cir. 1980). In short, "[a]n overt act is *any* act performed by *any* conspirator for the purpose of accomplishing the objectives of the conspiracy." *United States v. McKee*, 506 F.3d 225, 243 (3d Cir. 2007) (emphasis added). Here, the Indictment's allegations that David Stone, Sr. attempted to obtain WMD material allege an act, performed by one of the alleged conspirators, for purpose of accomplishing the objectives of the conspiracy, to wit, the use of WMDs. Defendants have cited, and I have found, no cases suggesting that this conduct cannot constitute an overt act merely because defendant David Stone, Sr. was unsuccessful in his efforts or because defendants did not ever actually possess a WMD or WMD material. *See United States v. Blackwell*, 954 F. Supp. 944, 958 (D.N.J. 1997) ("As long as the act follows and tends toward the accomplishment of the plan or scheme and is knowingly done in furtherance of some object or purpose of the conspiracy charged in the indictment, it satisfies the overt act requirement."). Accordingly, the Court should deny defendants' motion to dismiss on this basis.

2.    *First Amendment*

Defendants also contend that the seditious conspiracy statute violates the First Amendment as applied to the circumstances alleged in the indictment. In support of this argument, defendants rely primarily on *Brandenburg v. Ohio*, 395 U.S. 444 (1969) (per curiam). In that case the

defendant, a leader of a Ku Klux Klan group, was convicted under an Ohio statute for advocating the duty and necessity of crime, violence, or sabotage as a means of accomplishing political reform. *See id.* at 444-45. The Court found the conviction improper under the First Amendment, holding that "the constitutional guarantees of free speech and free press do not permit a State to forbid or proscribe advocacy of the use of force or of law violation except where such advocacy is directed to inciting or producing imminent lawless action and is likely to incite or produce such action." *Id.* at 447. Relying on *Brandenburg*, defendants argue that the indictment fails to allege that the defendants' conspiracy incited or was likely to produce *imminent* lawless action. The government responds that *Brandenburg* is inapplicable here, because the Indictment does not allege mere advocacy, but an actual conspiracy to use force. The Court should conclude that *Brandenburg* is inapplicable here. If the Court rejects this recommendation, the Court should nevertheless conclude that *Brandenburg* does not entitle defendants' to dismissal at this stage of the proceedings.

### a. <u>Brandenburg is Inapplicable</u>

With respect to the applicability of *Brandenburg*, the government has the better argument. In *United States v. Rahman*, 189 F.3d 88 (2d Cir. 1999), the court considered a facial challenge to the constitutionality of § 2384. The court found *Brandenburg* inapposite, noting that unlike the state statute in that case, "[t]o be convicted under Section 2384, one must conspire to *use* force, not just to *advocate* the use of force." *Id.* at 115. The court also found support for this conclusion "in a number of the Supreme Court's more recent First Amendment decisions," which "make clear that a line exists between expressions of belief, which are protected by the First Amendment, and threatened or actual uses of force, which are not." *Id.* (citing *Wisconsin v. Mitchell*, 508 U.S. 476, 484 (1993); *R.A.V. v. City of St. Paul*, 505 U.S. 377, 388 (1992); *NAACP v. Claiborne Hardware*

*Co.*, 458 U.S. 886, 916 (1982); *Watts v. United States*, 394 U.S. 705, 707 (1969)). Defendants argue that "[a]ny comparison between the instant case and *Rahman* is far-fetched," Reply, at 7, because *Rahman* was a facial challenge and there was no dispute regarding imminence. Imminence was, however, an issue, because the court was considering a facial challenge to the statute. If an imminence requirement applied, the Court would not have been able to uphold the facial validity of the statute, regardless of the particular circumstances of the crime at issue there. And in any event, even if the result is not directly controlling, the reasoning of the Second Circuit is equally applicable here: the point of *Brandenburg* is that the government may not constitutionally proscribe mere advocacy without a showing of imminence, but *Brandenburg* says nothing about speech which goes beyond mere advocacy and constitutes an actual conspiracy to use force. As the Second Circuit explained:

> Numerous crimes under the federal criminal code are, or can be, committed by speech alone. . . . Various [statutes] criminalize conspiracies of specified objectives. . . . All of these offenses are characteristically committed through speech. Notwithstanding that political speech and religious exercise are among the activities most jealously guarded by the First Amendment, one is not immunized from prosecution for such speech-based offenses merely because one commits them through the medium of political speech or religious preaching. Of course, courts must be vigilant to insure that prosecutions are not improperly based on the mere expression of unpopular ideas. But if the evidence shows that the speeches crossed the line into criminal solicitation, procurement of criminal activity, or conspiracy to violate the laws, the prosecution is permissible.

*Rahman*, 189 F.3d at 117.

*Rahman*, furthermore, does not stand alone. A number of courts have recognized this distinction between mere advocacy or conspiracy to advocate, which is subject to the *Brandenburg* test, and conspiracy to engage in otherwise unlawful, unprotected conduct, which is not subject to the *Brandenburg* test. *See, e.g.*, *United States v. Bell*, 414 F.3d 474, 482 n.8 (3d Cir. 2005)

14

(emphasis added) ("*Brandenburg* clearly does not apply to the kind of unprotected or unlawful speech or speech-acts (e.g. aiding and abetting, extortion, criminal solicitation, *conspiracy*, harassment, or fighting words) at issue . . . here."); *United States v. Livdahl*, 459 F. Supp. 2d 1255, 1268 (S.D. Fla. 2005) (*Brandenburg* inapplicable to charge of conspiracy to commit mail and wire fraud by introducing misbranded drugs into the market, because "[u]nlike the appellant in *Brandenburg*, defendant is *not* charged [with] mere advocacy of unlawful conduct."); *United States v. Sattar*, 395 F. Supp. 2d 79, 102 (S.D.N.Y. 2005) ("*Brandenburg* and its progeny are not applicable here, where Abdel Rahman was found to have participated in the Count Two conspiracy to murder, rather than having merely engaged in advocacy. *Brandenburg* analysis does not apply to unlawful speech-acts such as conspiracy or aiding and abetting."), *aff'd*, 590 F.3d 93 (2d Cir. 2009); *United States v. Dellacroce*, 625 F. Supp. 1387, 1391 (E.D.N.Y. 1986) ("Nor does Count One charge, in alleged violation of the First Amendment, simply an agreement to advocate or to assemble to advocate crimes. *Brandenburg* . . . is thus not pertinent. The charge is that defendants conspired to do something against the law, that is, to participate in the conduct of an enterprise through a pattern of racketeering activity.").

In short, in a case such as this "it is not the 'speech that is made criminal, but rather the agreement, and whether the overt act is constitutionally protected speech would be irrelevant." *United States ex rel. Epton v. Nenna*, 446 F.2d 363, 368 (2d Cir. 1971) (citing *Yates v. United States*, 354 U.S. 298 (1957)); *see also*, *United States v. Rahman*, No. S3 93 Cr. 181, 1993 WL 410449, at *6 (S.D.N.Y. Oct. 13, 1993) (explaining, in the context of counsel's request for appointment under the CJA, that under the seditious conspiracy statute "it is not the motive that is the gravamen of the crime; it is the means. Which is to say, it is not advocacy that is sought to be punished here; it is the

use of force.").

Defendants argue that, notwithstanding the Second Circuit's opinion in *Rahman*, "prior to Rahman's trial for seditious conspiracy, the district judge specifically held that the *Brandenburg* test would indeed have to be met to avoid dismissal of charges in the indictment." Def.s' Br., at 6-7 (citing *United States v. Rahman*, No. S3 93 Cr. 181, 1994 WL 388927, at *1-*2 (S.D.N.Y. July 22, 1994)). Even if such a holding could survive the Second Circuit's reasoning on appeal in *Rahman*, it is not the case that Judge Mukasey "specifically held that the *Brandenburg* test would indeed have to be met to avoid dismissal of charges in the indictment." In denying the defendants' motions to dismiss, Judge Mukasey did cite *Brandenburg* for the proposition "that speech may sound constitutionally protected does not mean that it is, if that speech was intended and likely to generate imminent lawless action by others." *Id*. at *2. This was made only as a "[f]urther" reason for rejecting the defendants' motion, after the principal one recognized by Judge Mukasey–namely, that the speech at issue was simply not protected by the First Amendment. As Judge Mukasey observed, "that speech–even speech that includes reference to religion–may play a part in the commission of a crime does not insulate such crime from prosecution. '[S]peech is not protected by the First Amendment when it is the very vehicle of the crime itself.'" *Id*. at *1 (quoting *United States v. Rowlee*, 899 F.2d 1275, 1278 (2d Cir. 1990) (internal quotation omitted) (giving the federal conspiracy statutes as an example)). Because "[t]he gist of the crime of conspiracy is agreement to violate the law," it is "both possible and permissible to charge that criminal statutes were violated entirely by means of speech." *Id*. at *1-*2. Although Judge Mukasey cited to the permissibility under *Brandenburg* of punishing speech likely to generate imminent criminal action by others as an additional basis for rejecting the defendants' motion to dismiss, nothing in his opinion suggests that

he viewed *Brandenburg* as requiring a showing of imminent lawless action with respect to the seditious conspiracy charges.

Nor do the other cases upon which defendants rely support their position. For example, in *Herndon v. Lowry*, 301 U.S. 242 (1937), the defendant was charged under a state statute forbidding incitement or attempted incitement to insurrection by violence, by virtue of his membership and leadership position in the Communist Party. The Court found that the defendant's conviction violated his freedom of speech. None of the reasoning employed by the Court, however, suggests that imminence must be shown in a case involving conspiracy, which was not charged in that case. For example, the Court first explained that "[i]f the evidence fail[ed] to show that [the defendant] did so incite, then, as applied to him, the statute unreasonably limits freedom of speech and freedom of assembly. . . ." *Id*. at 259. Finding the evidence so lacking, the Court reversed the conviction. The Court explained that

> [i]n its application the offense made criminal is that of soliciting members for a political party and conducting meetings of a local unit of that party when one of the doctrines of the party, established by reference to a document not shown to have been exhibited to any one by the accused, may be said to be ultimate resort to violence at some indefinite future time against organized government.

*Id*. at 260. The Court further explained that "[t]he statute, as construed and applied, amounts merely to a dragnet which may enmesh any one who agitates for a change of government if a jury can be persuaded that he ought to have foreseen his words would have some effect in the future conduct of others." *Id*. at 263-64. That is not the case here. Defendants are not charged with mere membership in an organization whose doctrines include resort to violence at some indefinite future time, nor are they charged with merely affecting the future conduct of others through their words. Rather, they are charged with an actual agreement to commit actual acts of violence.

*Hartzel v. United States*, 322 U.S. 680 (1944), is likewise inapposite. In that case, the defendants were convicted under statutes prohibiting willful obstruction of the recruiting and enlistment service of the United States and the willful attempt to cause insubordination, disloyalty, mutiny and refusal duty in the military and naval forces of the United States, based on their publication and dissemination of three pamphlets to various persons and organizations, among whom were individuals available and eligible for recruitment and enlistment in the military and naval forces of the United States as well as individuals already members of the armed forces. The Court, however, did not consider the constitutionality of these statutes. On the contrary, the Court observed that "[n]o question is here raised as to the constitutionality of these provisions or as to the sufficiency of the indictment returned thereunder." *Id*. at 686. Rather, *Hartzel* discussed the sufficiency of the evidence presented to establish the defendants' guilt. In ruling on this issue, the Court did observe that, because the statute touched on speech, a necessary element was whether the speech created "a clear and present danger that the activities in question will bring about the substantive evils which Congress has a right to prevent." *Id*. at 687. The Court, however, never addressed whether the evidence presented at trial satisfied this element, instead holding only that the government had failed to establish that the defendants specifically intended to interfere with recruitment and enlistment or to cause insubordination, a statutory element of the offense. *See id*. at 687-89. And, as with *Herndon* and *Brandenburg* but unlike here, the speech at issue involved only advocacy and could not be construed as involving conspiracy to actually commit unlawful acts.

Finally, *Hess v. Indiana*, 414 U.S. 105 (1973) (per curiam), does not compel a different conclusion. In that case, the defendant was convicted under a content-neutral disorderly conduct statute. The defendant was at an antiwar demonstration, to which the police responded. When the

police forced the crowd out of the street and on to the curb, an officer heard the defendant say, "We'll take the fucking street later." Based on this utterance, the defendant was arrested and charged with disorderly conduct. After rejecting other bases for sustaining the defendant's conviction, the Court explained that the conviction could not be sustained under *Brandenburg*. The Court explained that because "the uncontroverted evidence showed that Hess' statement was not directed to any person or group of persons, it cannot be said that he was advocating, in the normal sense, any action," *id*. at 108-09, and in any event even if it did advocate, at worst it merely advocated nothing more than "illegal action at some indefinite future time." *Id*. at 108. *Hess*, like *Brandenburg*, therefore involves mere advocacy, not conspiracy to actually commit an unprotected, unlawful act.[4]

In short, each of the cases relied upon by defendants involved, in one form or another, mere advocacy of violence or unlawful conduct. None involved a conspiracy to actually engage in violence or other unlawful conduct, a distinction which the courts have found dispositive. To be sure, if the government is unable to prove that defendants conspired to actually use force, *Brandenburg* would be applicable. And defendants are entitled to have the jury properly instructed that they may "not be convicted on the basis of [their] beliefs or the expression of them–even if those beliefs favored violence." *Rahman*, 189 F.3d at 118. However, *Brandenburg* does not require that, if the government is able to prove such a conspiracy, it must also prove that the conduct agreed

---

[4]In their reply brief, defendants rely on the Supreme Court's decision in *Ashcroft v. Free Speech Coalition*, 535 U.S. 234 (2002), which quoted *Hess* for the proposition that "[t]he government may not prohibit speech because it increases the chance of an unlawful act 'at some indefinite future time.'" *Id*. at 253 (quoting *Hess*, 414 U.S. at 108). *Ashcroft*, however, actually undercuts defendants' argument. After quoting *Hess* and *Brandenburg* for the imminence requirement, the *Ashcroft* Court notes that the case before it involved "no attempt, incitement, solicitation, *or conspiracy*." *Id*. Thus, the *Ashcroft* Court itself recognized the distinction discussed above between mere advocacy of illegal action and conspiracy to actually commit an unlawful act.

to by members of the conspiracy was imminent.

### b. Even If Applicable, <u>Brandenburg</u> Does Not Require Dismissal

If the Court rejects this recommendation and concludes that *Brandenburg* does indeed require the government to establish imminence, the Court's conclusion would obviously change the nature of the government's burden at trial. Such a ruling, however, would not entitle defendants to dismissal at this stage of the proceedings. As explained above, in resolving defendants' motion to dismiss the Court may consider only the Indictment; it may not pierce the Indictment and consider the facts which defendants contend will or will not be shown at trial. Defendants' as-applied challenge under *Brandenburg*, however, requires the Court to delve into these very facts. Simply put, the government and defendants have starkly different views not only on the existence and nature of the alleged conspiracy, but also on how far along the alleged conspirators were in preparing to effectuate their plans. Such evidence directly bears on whether the conspiracy threatened imminent violence or lawless action. In other words, defendants' as-applied challenge "depends on factual assertions about the circumstances surrounding the offense that are interwoven with evidence about whether he committed the crime the Indictment has charged." *United States v. Poulin*, 588 F. Supp. 2d 58, 61-62 (D. Me. 2008) (rejecting as-applied First Amendment challenge raised in motion to dismiss); *see also*, *United States v. Pope*, 613 F.3d 1255, 1261-62 (10th Cir. 2010) (internal quotation omitted) (rejecting pre-trial as-applied Second Amendment challenge to firearms charge, explaining that the defendant "contends the statute is unconstitutional only in light of the facts surrounding the commission of the alleged offense, the very facts a court may *not* consider before trial."); *United States v. Coronado*, 461 F. Supp. 2d 1209, 1217-18 (S.D. Cal. 2006) (rejecting as premature as-applied First Amendment challenge brought in a motion to dismiss the indictment);

*cf. United States v. McDermott*, 822 F. Supp. 582, 591-94 (N.D. Iowa 1993) (accepting as true and in the light most favorable to the government the allegations in the indictment in rejecting the defendant's as-applied First Amendment challenge brought in a motion to dismiss).

Here, the Indictment alleges that defendants, in addition to conspiring to use force to hinder the execution of the laws, actually trained for such a confrontation and acquired weapons and explosives or explosive device components in furtherance of their goals. The Indictment also charges that one conspirator, upon learning of the arrest of other members of the group, actually implemented the conspiracy's plans by alerting other members of the group, arming himself, proceeding to a pre-determined rallying point, and engaging in a stand-off with law enforcement officers. These allegations, taken as true and construed in the light most favorable to the government, suggest that violence or other lawless action was, in fact, imminent. Thus, even if the government must show imminence under *Brandenburg*, the Indictment is not subject to dismissal at this stage of the proceedings.

D.    *Conclusion*

As noted above, the question before the Court is limited. The Court is not now called on to determine whether the government will be able to prove a valid case at trial, or whether it will be able to show that defendants engaged in conduct unprotected by the First Amendment. The only question before the Court is whether the allegations in the Indictment, taken as true and viewed in the light most favorable to the government, are sufficient to plead the crimes charged under the First Amendment and the relevant statutes, and apprise the defendants of the nature of the charges. For the reasons explained above, the Court should conclude that the First Superceding Indictment is sufficient. Accordingly, the Court should deny defendants' motion to dismiss the Indictment.

III.     NOTICE TO PARTIES REGARDING OBJECTIONS:

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in FED. R. CIV. P. 72(b).  Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Secretary of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Federation of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response.  The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court.  The response shall address specifically, and in the same order raised, each issue contained within the objections.


                                        s/Paul J. Komives
                                        PAUL J. KOMIVES
                                        UNITED STATES MAGISTRATE JUDGE
Dated: 1/12/11


> The undersigned certifies that a copy of the foregoing order was served on the attorneys of record and  by electronic means or U.S. Mail on January 12, 2011.
>
>                          s/Eddrey Butts
>                          Case Manager