**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

**UNITED STATES OF AMERICA,**

        Plaintiff,                CASE NUMBER: 10-20123
                                        HONORABLE VICTORIA A. ROBERTS

v.

**DAVID BRIAN STONE, ET. AL.,**

        Defendant.
_____/

## ORDER ADOPTING THE MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Before the Court is Defendant David Brian Stone, Jr.'s Motion to Dismiss counts 1 through 7 of the First Superceding Indictment. (Doc. # 198). Co-defendants Joshua Clough, Tina Mae Stone, Jacob J. Ward, Joshua Matthew Stone, David Brian Stone, Thomas William Piatek, Kristopher T. Sickles, and Michael David Meeks joined. (Doc. #s 200, 201, 203, 205, 207, 210, 212, 214).

The Court referred the matter to Magistrate Judge Paul Komives for a Report and Recommendation ("R & R"). He held a hearing on December 1, 2010. The magistrate judge recommends that the Court DENY the motion. (Doc. # 269). Defendant Stone, Jr. filed objections to the R & R. (Doc. # 270). The other Defendants joined. The Government responded to the objections. (Doc. # 290).

The Government filed a Second Superceding Indictment on February 10, 2011. (Doc. # 293),which does not change the substantive counts of the First Superceding Indictment; it only adds a criminal forfeiture count. Accordingly, the Court presumes

1

that this order disposes of any challenge to the Second Superceding Indictment on the same grounds.

The Court **ADOPTS** the magistrate's R & R; Defendants' motion is **DENIED**.

Review of a magistrate judge's recommendation on a dispositive motion is de novo. 28 U.S.C. § 636(b)(1). "A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions." *Id.*

The magistrate noted that the question before the court in a motion to dismiss an Indictment pursuant to Fed. R. Crim. P. 12(b) is limited to "whether the allegations in the Indictment, taken as true, are sufficient to plead the crimes charged and appraise the defendants of the nature of the charges." (Doc. # 269 at 5). "The question is not whether the government will be able to prove a valid case at trial." (*Id.*).

In their motion to dismiss, citing *Brandenburg v. Ohio*, 395 U.S. 444 (1969) (per curiam), Defendants argue that the Seditious Conspiracy and Conspiracy to Use Weapons of Mass Destruction ("WMD") charges, as applied to Defendants, violate their First Amendment freedom of speech and assembly rights, because the Government did not allege facts establishing that there was "'a clear and present danger' of 'imminent lawless action.'" (Doc. # 198 at 8) (citations omitted). Defendants also say the facts in the Indictment are insufficient to support the Seditious Conspiracy and WMD charges, and that counts 3 through 7, which rely on the existence of the alleged seditious conspiracy, must also be dismissed. (*Id.* at 10-20).

The magistrate judge concluded that the Indictment sufficiently charged that

2

Defendants conspired to oppose the United States Government by force, by agreeing to provoke an armed conflict with federal law enforcement, and not just with local law enforcement. (Doc. # 269 at 6-10). The magistrate noted that the Government charged that the alleged conspiracy to murder a local law enforcement official "was merely a first step designed to provoke a confrontation with local and federal law enforcement officials for the very purpose of engaging them in an armed conflict and preventing the execution of federal law." (*Id.* at 9). The magistrate likewise determined that the WMD charge was sufficiently pleaded in the Indictment, which alleges an agreement by Defendants, to use WMD. (*Id.* at 11-12).

Finally, the magistrate concluded that the seditious conspiracy statute, as applied to Defendants, did not violate the First Amendment. In this regard, the magistrate held that *Brandenburg* is inapplicable because "the point of *Brandenburg* is that the government may not constitutionally proscribe mere advocacy [or conspiracy to advocate] without a showing of imminence," (*id.* at 14), and in this case the Government charged more than mere advocacy, namely, that Defendants "agre[ed] to commit actual acts of violence." (*Id.* at 17). The magistrate reasoned:

> In short, each of the cases relied upon by defendants involved, in one form or another, mere advocacy of violence or unlawful conduct. None involved a conspiry to actually engage in violence or other unlawful conduct. To be sure, if the government is unable to prove that defendants conspired to actually use force, *Brandenburg* would be applicable. And defendants are entitled to have the jury properly instructed that they may "not be convicted on the basis of their beliefs or the expression of them- even if those beliefs favored violence." [*United States v. Rahman*, 189 F.3d 88, 118 (2d Cir. 1999)]. However, *Brandenburg* does not require that, if the government is able to prove such a conspiracy, it must also prove that the conduct agreed to by members of the conspiracy was imminent.

3

(*Id.* at 19-20). In addition, the magistrate held that even if applicable, *Brandenburg* does not require dismissal because the facts alleged in the Indictment suggest that "violence or other lawless action was, in fact, imminent." (*Id.* at 21).

Defendants object to the magistrate's order on several grounds. First, they say the Indictment is insufficient to establish a conspiracy to attack the United States Government because it references generic law enforcement, rather than federal law enforcement. (Doc. # 270 at 3) Contrary to this contention, and as properly noted in the R & R, the Indictment alleges a conspiracy to engage in "armed conflict against local, state *and federal law enforcement*" by carrying out certain means and methods including drawing law enforcement agents from throughout the nation to Michigan, by killing a local agent and attacking the other agents during the funeral procession with mortars, IEDs and EFPs. (Doc. # 293 at 7-8) (emphasis added). These allegations are sufficient to satisfy the statute's requirement that the Defendants conspired "to overthrow, put down, or to destroy by force the Government of the United States...or to oppose by force the authority thereof, or by force to prevent, hinder, or delay the execution of any law of the United States...." 18 U.S.C. § 2384. As the magistrate observed, the Indictment's reference to local law enforcement, alleges "merely a first step designed to provoke a confrontation with...federal law enforcement officials for the very purpose of engaging them in an armed conflict and preventing the execution of federal law." (Doc. # 269 at 9). For the reasons discussed in the R & R, the Indictment also sufficiently charges conspiracy to use weapons of mass destruction.

Defendants next contend that the magistrate erred in concluding that the *Brandenburg* clear and present danger/imminence test does not apply to the case. In

4

*Brandenburg*, the Supreme Court held, "the constitutional guarantees of free speech and free press do not permit a State to forbid or proscribe advocacy of the use of force or of law violation except where such advocacy is directed to inciting or producing imminent lawless action and is likely to incite or produce such action." 395 U.S. at 447. Defendants rely on cases that the magistrate found inapposite because they involved mere advocacy of unlawful conduct, or expression of unpopular beliefs, not conspiracy to commit actual, unlawful acts, as in this case. (Doc. # 269 at 17-20).

This Court agrees with the magistrate that the Government is not required to prove that Defendants' conduct was likely to lead to imminent lawless behavior. For the reasons stated in the magistrate's opinion, the cases relied on by Defendants are not persuasive. The Second Circuit, in *Rahman*, put it best:

> The prohibitions of the seditious conspiracy statute are much [farther] removed from the realm of constitutionally protected speech than those at issue in *Dennis* and its progeny. To be convicted under Section 2384, one must conspire to *use* force, not just to *advocate* the use of force. We have no doubt that this passes the test of constitutionality. Our view of Section 2384's constitutionality also finds support in a number of the Supreme Court's more recent First Amendment decisions. These cases make clear that a line exists between expressions of belief, which are protected by the First Amendment, and threatened or actual use of force, which are not.

189 F.3d at 115 (emphasis in original). The Government, in this case, charged threatened use of force and conspiracy to commit unlawful acts, not mere advocacy of illegal conduct or expression of unlawful beliefs.

Defendants rely on *Ashcroft v. Free Speech Coalition*, 535 U.S. 234 (2002), a case that they note came three years after *Rahman.* They say *Ashcroft* "forceful[ly] assert[ed]...the applicability of *Brandenburg*," (Doc. # 270 at 8 n. 3) and held that "'[t]he government may not prohibit *speech* because it increases the chance of an unlawful act

5

at some indefinite future time.'" (*Id.* at 8 (quoting *Ashcroft*, 535 U.S. at 253)) (emphasis in original). While the Government intends to use speech *as evidence* of the crimes charged, the charges themselves do not involve outlawing speech or other expression of beliefs or ideas. The charges, facially and as applied to Defendants, allege an agreement to commit unlawful and violent acts. *Ashcroft*, which decided the constitutionality of a statute criminalizing the possession or distribution of sexually explicit images that appeared to depict minors, but were made without using real children, does not proscribe these types of charges. 535 U.S. at 239.

Likewise, the Ohio Criminal Syndicalism Act, at issue in *Brandenburg*, specifically proscribed advocating, teaching, publishing, circulating, spreading, and assembling to teach or advocate, the doctrines of criminal syndicalism. 395 U.S. at 448. Thus, the statute "by its own words and as applied, purport[ed] to punish mere advocacy and to forbid, on pain of criminal punishment, assembly with others merely to advocate the described type of action," distinguishing it from the statutes at issue here. *Id.* at 449. The statutes in this case do not purport to punish mere advocacy or speech. Proof of Defendants' advocacy and/or speech may play a role in the Government's prosecution, but that does not mean that the statutes, as applied to Defendants, violate their free speech and assembly rights. Indeed, the Supreme Court stated, "[t]he First Amendment...does not prohibit the evidentiary use of speech to establish the elements of a crime or to prove motive or intent. Evidence of a defendant's previous declarations or statements is commonly admitted in criminal trials subject to evidentiary rules dealing with relevancy, reliability, and the like." *Wisconsin v. Mitchell*, 508 U.S. 476, 489 (1993).

Defendants' reliance on *United States v. Bell*, 414 F.3d 474, 482 n. 8 (3d Cir. 2005), *James v. Meow Media, Inc.*, 300 F.3d 683, 698-99 (6th Cir. 2005), and *Honey v. Goodman*, 432 F.2d 333, 338 (6th Cir. 1970), is misplaced. In *James*, the Sixth Circuit applied the *Brandenburg* imminence test in the face of a negligence action initiated by the parents of three students who were shot to death by a classmate. 432 F.2d at 687-88, 698. The plaintiffs sued various companies that produced or maintained violent and/or sexually explicit video games, internet sites and a movie, played and viewed by the adolescent shooter prior to the killings. *Id.* at 687-88. The plaintiffs argued that this material "communicated to [the shooter] a disregard for human life and an endorsement of violence that persuaded him to commit the murders." *Id.* at 696. In discussing *Brandenburg*, the Sixth Circuit observed that *James* involved communication that allegedly incited violence in others. *Id.* at 698. This communication formed the sole basis of the claim against the defendants. The Sixth Circuit affirmed the district court's dismissal on non-constitutional state law grounds and withheld resolution of the constitutional questions. *Id.* at 699. It noted, however, that federal courts generally require that all expression, advocacy or not, meet the *Brandenburg* test before it is regulated for its tendency to incite violence in others. *Id.*

The Government is not prosecuting these Defendants solely on the basis of their speech and its likelihood to incite violence in others. Defendants are accused of conspiring to commit unlawful acts against the United States Government, and not merely of expressing unpopular ideas that might incite *others* to rise up against the Government. This distinction makes *Goodman* inapposite as well. In that case, the appellants were accused of sending letters to residents of a community where a criminal

7

trial was pending, urging them not to convict the defendants in that trial. 432 F.2d at 336. The appellants were charged with the common law offense of "embracery," defined as the attempted corruption of, or influence over, a jury to persuade them to be favorable to one side or another. *Id.* at 337. The crime charged was based solely on appellants' "expression of controversial ideas in a manner akin to 'pure speech'" and the court applied the clear and present danger standard to uphold the indictment despite a First Amendment challenge. *Id.* at 338; *see also R.A.V. v. City of St. Paul, Minnesota*, 505 U.S. 377, 385, 391 (1992) (holding ordinance that outlawed cross burning, itself a form of "non-verbal expressive activity," on public or private property, was facially invalid under the First Amendment).

Unlike the negligence charge in *James*, the embracery charge in *Goodman*, and the cross-burning charge in *R.A.V.*, the crimes charged here are not based solely upon Defendants' expressive activity. The seditious conspiracy statute, as applied to Defendants, does not regulate mere expression, but Defendants' alleged unlawful agreement to oppose the Government by force, and to "prevent, hinder, and delay by force the execution of the United States law . . ." (Doc. # 293 at 6). Similarly, the WMD statute proscribes the unlawful conspiracy to *use* weapons of mass destruction, not advocacy of, or speech about, the use of such weapons. 18 U.S.C. § 2332a(a)(2) (2004). The First Amendment does not shield Defendants from prosecution for their conduct, even if the Government uses their speech as evidence of such conduct. *See United States v. Rowlee*, 899 F.2d 1275, 1278 (2d Cir. 1990) ("Appellants were convicted of the act of conspiracy.... Their conduct was not protected by the First Amendment merely because, in part, it may have involved the use of language. When

'speech' and 'nonspeech' elements are combined in the same course of conduct, a sufficiently important governmental interest in regulating the nonspeech element can justify incidental limitations on First Amendment freedoms." (citation and internal quotation marks omitted)).

Defendants say that even if *Brandenburg* only applies to crimes involving advocacy, the Indictment charges the Defendants with anti-government advocacy because the seditious conspiracy charge is based on "the defendants['] use of constitutionally protected expression."  (Doc. # 270 at 14).  As noted above, the Indictment specifically charges that Defendants conspired to oppose by force the United States Government by killing a member of law enforcement and attacking the funeral procession motorcade (Doc. # 293 at 6); conducting operations against the government (*id.* at 7); engaging in military-style training (*id.*); obtaining information about IEDs and EFPs (*id.* at 8); and killing civilians who "happened upon" their training exercise and did not acquiesce to their demands.  (*Id.* at 8).  These alleged acts go beyond mere expression or advocacy.

To the extent the Government attempts to prove the charges against Defendants with evidence of their advocacy, views, or beliefs, the Court can safeguard their First Amendment rights by instructing the jury that it may not convict Defendants because they may hold unpopular beliefs.  *See Rahman*, 189 F.3d at 118 ("Judge Mukasey properly protected against the danger that Abdel Rahman might be convicted because of his unpopular religious beliefs that were hostile to the United States.  He explained to the jury the limited use it was entitled to make of the material received as evidence of motive.  He instructed that a defendant could not be convicted on the basis of his beliefs

or the expression of them -- even if those beliefs favored violence. He properly instructed the jury that it could find a defendant guilty only if the evidence proved he committed a crime charged in the indictment.").

Lastly, Defendants argue that counts 1 through 7 of the Indictment must be dismissed because the Government failed to establish imminence pursuant to *Brandenburg*. (Doc. # 270 at 16). However, the Government need not show *Brandenburg* imminence, since the Indictment is not based solely on otherwise protected speech. Further, the Court agrees with the magistrate, that even if *Brandenburg* applied, the Indictment sufficiently charges "that violence or other lawless action was, in fact, imminent." (Doc. # 269 at 21).

The Court thoroughly reviewed the magistrate's opinion and cases cited there, as well as Defendants' objections and the case law Defendants rely on. The Court agrees with the magistrate. Defendants' motion is **DENIED**.

**IT IS ORDERED**.


S/Victoria A. Roberts
Victoria A. Roberts
United States District Judge

Dated: March 1, 2011

The undersigned certifies that a copy of this document was served on the attorneys of record by electronic means or U.S. Mail on March 1, 2011.

s/Carol A. Pinegar
Deputy Clerk