UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,                    CASE NUMBER: 10-20123
                                            HONORABLE VICTORIA A. ROBERTS

v.

D-6 MICHAEL DAVID MEEKS and,
D-7 THOMAS WILLIAM PIATEK,

        Defendants.
_____/

## ORDER

**I.    INTRODUCTION**

This matter is before the Court on Defendant Michael Meeks' Amended Motion for Bond Hearing. (Doc. # 399). Defendant Thomas Piatek joins and concurs, incorporating by reference some of Meeks' legal arguments. (Doc. # 402). The Court finds a hearing is not necessary, and cancels the hearing scheduled for September 28, 2011.

The Court **DENIES** the motions.

**II.    FACTS AND PROCEDURAL HISTORY**

On February 10, 2011, the Government, in a Second Superseding Indictment, charged Defendants Meeks, Piatek, and seven others, with conspiring to oppose by force the authority of the United States Government, conspiring to use weapons of mass destruction, and related offenses.

The Government alleges all nine Defendants belong to an anti-government

1

extremist organization, the Hutaree. The charges are serious and two trigger a presumption that no condition, or combination of conditions, will reasonably assure Defendants' appearance in Court as required, and the safety of the community, for purposes of pretrial release.

In March and April of 2010, all Defendants appeared before magistrate judges for detention hearings. The magistrates ordered all of them detained. They moved to revoke the detention orders. The Court held a *de novo* bond review hearing on April 27-28, 2010. The Court granted all Defendants' motions and reversed the magistrates' detention orders, imposing a variety of conditions of release on Defendants. The Government moved to stay this Court's order pending appeal to the Sixth Circuit. This Court granted, but then dissolved, a limited stay and ordered that Defendants be released. However, on May 10, 2010, a panel of the Sixth Circuit granted a temporary stay.

The Government appealed the Court's release of Defendants David Stone, Sr., Joshua Stone, Michael Meeks, Thomas Piatek, and Joshua Clough. Although it originally appealed the release of all Defendants, it abandoned its appeal of the release of David Stone, Jr., Tina Stone, Kristopher Sickles, and Jacob Ward. On June 22, 2010, the Sixth Circuit reversed this Court's order releasing David Stone, Sr., Joshua Stone, Michael Meeks, Thomas Piatek, and Joshua Clough. It held that "each defendant pose[d] a danger to the community and that no conditions of release will reasonably assure the safety of the community." *United States v. Stone*, 608 F.3d 939, 954 (6th Cir. 2010); *see also* 18 U.S.C. § 3142(e)(1) ("If, after hearing pursuant to the provisions of subsection (f) of this section, the judicial officer finds that no condition or

combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community, such judicial officer shall order the detention of the person before trial.").

Now, over a year later, Defendants Meeks and Piatek move the Court to open their bond hearings. They assert they have new information material to whether their release poses a threat to society under 18 U.S.C. § 3142(f)(2)(B) and that their detention infringes on their Second Amendment right to possess weapons; Meeks also argues that the length of his pretrial detention violates the Due Process Clause of the Fifth Amendment.

## III.   ANALYSIS

### A.   Mandate Rule and Law of the Case

The Government points out, the Sixth Circuit rejected the issues Defendants raise when it denied their petitions for rehearing and rehearing en banc. The Government says because of that, the law of the case doctrine and mandate rule bar their consideration here.

The Court finds that the mandate rule and law of the case doctrine do not apply. While the Sixth Circuit ultimately denied rehearing, it remanded for further proceedings consistent with its published opinion, *Stone*, 608 F.3d at 954. That opinion did not address the merits of the due process and Second Amendment concerns now raised, or the new information Defendants bring to the Court's attention. *Cf. Irving v. United States*, 162 F.3d 154, 161 n.7 (1st Cir. 1998) ("In all events, we consider denials of rehearing en banc a very weak justification for a strict application of the law of the case doctrine. Denials of suggestions for rehearing en banc are pure exercises of discretion,

and, as such, the grant or denials of rehearing en banc is the functional equivalent of a grant or denial of certiorari by the Supreme Court. Such actions make no statement about the full court's view on the merits of a claim it declines to hear.").

However, as detailed below, Defendants' arguments and the information presented do not provide a basis either to reopen their detention hearings or to release them.

### B. New Information Material to Dangerousness

18 U.S.C. § 1342(f)(2)(B) governs the reopening of a pretrial detention hearing because of new information material to dangerousness and/or risk of flight. That section states:

> The hearing may be reopened, before or after a determination by the judicial officer, at any time before trial if the judicial officer finds that information exists that was not known to the movant at the time of the hearing and that has a material bearing on the issue whether there are conditions of release that will reasonably assure the appearance of such person as required and the safety of any other person and the community.

To justify reopening the hearing, the new information must be sufficiently material to the issue of dangerousness. *United States v. Sandles*, 9 Fed. Appx. 377, 379 (6th Cir. 2001). "Courts have interpreted strictly the statutory provision authorizing the reopening of a detention hearing, holding that hearings should not be reopened if the evidence proffered was available at the time of the hearing." *United States v. Jerdine*, No. 1:08 CR 00481, 2009 WL 4906564, at *3 (N.D. Ohio Dec. 18, 2009) (citing *United States v. Dillon*, 938 F.2d 1412, 1415 (1st Cir. 1991); *United States v. Hare*, 873 F.2d 796, 799 (5th Cir. 1989); *United States v. Peralta*, 849 F.2d 625, 626-27 (D.C. Cir. 1988)).

Both Defendants claim entitlement to a new bond hearing under § 3142(f)(2)(B). The "new evidence" or information they present is really a lack of evidence. After a year of discovery, Meeks says "[t]he Government has no evidence that [he] ever possessed any tracer ammunition, or components to make an IED." (Doc. # 399 at 4). He calls the Government's allegations that he possessed these materials, "the primary 'facts' relied upon by the Sixth Circuit in their determination." (*Id.*). He states the new evidence is material "to the supposed danger to the community the Sixth Circuit finds [him] to be." *Id.*

The Government contends this information is not new because it was offered to support Meeks' petition for rehearing before the Sixth Circuit. It also says the presence of tracer rounds and IED components was not a "primary fact" the Sixth Circuit relied on to detain him. It states, "[d]etention was based upon a combination of factors...." (Doc. # 413 at 8).

Assuming, without deciding, that the information Meeks now has, after a year of discovery, meets the definition of "new information," it does not provide a basis for this Court to release him. Importantly, the Sixth Circuit did not rely solely on the presence of tracer rounds and IED components (indeed, it mentioned no IED components were uncovered) at Meeks' residence when it discussed the evidence it believed strongly favored a finding of dangerousness:

> When Meeks' home was searched, the FBI found 16 long guns and thousands of rounds of ammunition, in addition to substantial food stockpiles and gas masks. He had been tasked to get component materials for IEDs, *though no explosive devices were found in his home*. He has spoken frequently about different ways to kill police officers, owns five semi-automatic weapons and has stated that he has a thousand tracer rounds for his AR-15 that he would be "doling out" to the Hutaree.

> He voiced plans to die by "copicide," which he has explained means killing a law enforcement officer while dying at the hands of another officer. On a single day in June 2009, Meeks suggested blowing up a local bridge "when the enemy came"; he "discussed capping a member of law enforcement and seizing that person's weapons"; and he stated that members of Congress "think they're different" but "wait until they find out that they bleed exactly the same." ... Meeks also declared: "We got to start over man. We got to get rid of the judicial system, everybody. They need to die." ... In February 2010, another Hutaree member suggested killing a judge, and Meeks chimed in: "I'm lookin' at enough people right here to take out virtually anybody. And I mean virtually anybody. You just got to be motivated enough to go do it." ... This evidence weighs strongly in favor of dangerousness.

*Stone*, 608 F.3d at 949-50 (emphasis added).

While the Sixth Circuit mentioned that authorities found 1000 tracer rounds at Meeks' home, *id.* at 953, this was one factor among many that warranted a finding of dangerousness. Meeks' "substantial arsenal of weapons," *id.*, and his statements evincing a desire to kill law enforcement and other government officials were equally, if not more, important to the court's holding. The Sixth Circuit's discussion of dangerousness focused more heavily on the many comments Meeks made regarding ways to kill law enforcement and others; the court quoted him extensively throughout this discussion. The court stated, "[v]iewing all of the factors together, we conclude that, as to Michael Meeks, no conditions of release will reasonably assure the safety of the community." *Id.*

Furthermore, if there is currently no reliable evidence that tracer rounds were recovered from Meeks' home, then there was no such evidence at the time of the Government's appeal. The Sixth Circuit recognized the burden of persuasion was on the Government to show Meeks was too dangerous to be released pending trial; it appears the Government offered little more than a list of items recovered from his

6

residence to help carry its burden.  *See Stone*, 608 F.3d at 948.  Meeks' attorney could have (and very well may have) argued that this is not reliable evidence.  The fact that the Sixth Circuit ordered Meeks detained despite the lack of evidence of tracer rounds and IED components in his home suggests this was not a material factor in its decision.

While the new information Meeks presents has some bearing on the "weight of the evidence" of dangerousness, it does not have a *material* bearing; it does not constitute "truly changed circumstances, something unexpected, or a significant event," as is required for the Court to reopen the hearing under § 3142(f)(2)(B).  *Jerdine*, 2009 WL 4906564, at *3 (citing *United States v. Rodriguez-Adorno*, 606 F.Supp.2d 232, 239 (D.P.R. 2009)).  Rather, it constitutes "[D]efendant's own evaluation of the strength of the case against him"; this will inevitably evolve as discovery proceeds and is admittedly intertwined with evidence of dangerousness in a case where the charges involve threats and agreements to commit violent acts.  However, at least one court has said this is not the type of new information Congress intended § 3142(f)(2)(B) to encompass.  *See Rodriguez-Adorno*, 606 F.Supp.2d at 239 ("[W]hile a movant may certainly (and usually will) become aware of new evidence as a result of discovery or investigation, and that evidence will almost certainly bear on at least the 'weight of the evidence' and 'nature of the charges' factors considered during a detention review, this Court believes that Congress intended new information to signify something other than a defendant's own evaluation of the strength of the case against him: truly changed circumstances, something unexpected, or a significant event.").

Piatek does not rely on so-called new, material information suggesting he is not a threat to others.  Rather, he appears to ask this Court to reverse the decision of the

Sixth Circuit as not supported by clear and convincing evidence. Section 3142(f)(2)(B) provides a specific route to relief that does not cover Piatek's challenges to his detention. He repeatedly faults the Sixth Circuit for failing to suggest that he would use his weapons if released pending trial. This is not a proper basis on which to grant the relief requested. Nor was the Sixth Circuit required to make this finding.

Piatek also says the Sixth Circuit got the facts wrong when it found he made statements in favor of killing agents/civilians and threatening his girlfriend. *Stone*, 608 F.3d at 953. However, the lack of evidence that Piatek threatened his girlfriend was addressed at oral arguments and is thus not "new information." *See id.* at 355 (J. White concurring in part and dissenting in part). The Sixth Circuit was persuaded by the evidence presented by the Government.

Further, Piatek's counsel could have rebutted the Government's contention that he threatened to kill agents and civilians, by arguing it failed to carry its burden of persuasion to show dangerousness by failing to produce documentary evidence of such threats. Information is not new if it could have been introduced at the original hearing. *See Dillon*, 938 F.2d at 1415 (affirming district court's decision not to reopen detention hearing based on the defendant's submission of affidavits from witnesses that could have been produced at the original hearing). However, like Meeks, Piatek seems to argue that the information is new because he learned it only after reviewing the discovery he has received over the course of the past year.

Assuming the Government's lack of documentary evidence that Piatek made statements in favor of killing agents/civilians can be viewed as "new information," such statements alone were not material to the Sixth Circuit's dangerousness finding. The

8

Sixth Circuit also focused on the "substantial arsenal of weapons," *id.* at 953, found at Piatek's residence–including, "among other things, 46 firearms, 13,000 rounds of ammunition, smoke grenades, a ballistic vest and helmet, a cross-bow, and a CD regarding explosives," *id.* at 950; Piatek's expressed hatred for law enforcement, *id.*; his threatening statements to his girlfriend, *id.* at 952; and his "heav[y]" involvement with the Hutaree. *Id.* at 953. And, as noted above in the Court's discussion of Meeks, Piatek's *arguments* about the sufficiency of the Government's evidence of threats are more properly viewed as "analytically based conclusions," *Rodriguez-Adorno*, 606 F.Supp.2d at 237, than new information falling within the narrow parameters of § 3142(f)(2)(B). Consequently, the information Piatek proffers does not warrant reopening the bond hearing.

### C. The Second Amendment

Meeks and Piatek cite *District of Columbia v. Heller*, 554 U.S. 570 (2008), *McDonald v. City of Chicago*, 130 S.Ct. 3020 (2010), and various other cases to argue that their pretrial detention infringes on their Second Amendment right to own guns. They contend the Sixth Circuit's reliance on the guns and ammunition found in their homes to conclude they are dangerous, places an undue burden on their fundamental gun ownership rights.

The cases on which Defendants rely do not support the proposition that courts cannot consider gun ownership in deciding whether to release or detain a criminal defendant pending trial on dangerousness grounds. In *Heller*, the Supreme Court invalidated a law that completely banned handgun possession in the home as violative of the Second Amendment. 554 U.S. at 635. In *McDonald*, the Supreme Court applied

the Second Amendment right to bear arms to the States by virtue of the Fourteenth Amendment and invalidated several Chicago and Chicago-area handgun bans and ordinances. 130 S.Ct. at 3026. Other cases Defendants cite likewise discuss the constitutionality of statutes regulating gun ownership and possession, and the validity of prosecutions and convictions under these statutes. *See, e.g.*, *United States v. Marzzarella*, 614 F.3d 85, 100-01 (3d Cir. 2010) (statute criminalizing the possession of firearms that were altered to make them harder or impossible to trace passed constitutional muster); *United States v. Frazier*, 314 Fed. Appx. 801, 807 (6th Cir. 2008) (conviction for possession of a firearm as a prior felon did not violate the defendant's Second Amendment rights). These cases fail to address whether courts can consider gun ownership when evaluating the weight of the evidence of dangerousness to the community under § 3142(g)(2) to determine if it is appropriate to release a defendant before trial.

Contrary to Defendants' position, the Sixth Circuit and other circuits have upheld the pretrial detention of criminal defendants on dangerousness grounds based in part on weapons found in the defendants' homes. *United States v. Hir*, 517 F.3d 1081, 1090 (9th Cir. 2008) (affirming a pretrial detention order based on the danger the defendant posed in part because of a "large cache of firearms and ammunition" found in searches of the defendant's home and storage facility); *United States v. Abboud*, 42 Fed. Appx. 784 (6th Cir. 2002) (emphasizing that "[a] search of the defendant's home and business revealed guns, one of which was loaded," when affirming the district court's pretrial detention order); *United States v. Ramsey*, 110 F.3d 65 (table), 1997 WL 135443, at *1 (6th Cir. Mar. 24 1997) (holding that the district court did not err in ordering the

10

defendant's detention pending trial in part because he "had access to firearms"); *United States v. Portes*, 786 F.2d 758, 765 (7th Cir. 1985) (the defendant posed a threat to the community, warranting pretrial detention, in part because federal law enforcement agents found three dangerous weapons–"a forty-five caliber handgun, a three-fifty-seven magnum and a two-shot derringer"–at his home).

Moreover, the Sixth Circuit acknowledged that "each of the hundred or so weapons recovered when [D]efendants' homes were searched were legally purchased and registered." *Stone*, 608 F.3d at 949 n. 8. However, this was not dispositive to the court's assessment of dangerousness. It observed, "[i]t is also legal to purchase and own fertilizer and diesel fuel, but if a person who has made threats against the government purchases a large quantity of both, it creates a different, more dangerous, implication." *Id.* Thus, courts can consider all facts potentially relevant to dangerousness, including otherwise lawful and constitutionally protected behavior, when making pretrial detention determinations. Defendants' Second Amendment argument fails.

### D. Due Process

Meeks argues continued detention violates his Fifth Amendment due process right. He relies on a Second Circuit opinion that sets forth a four-pronged analysis to determine whether the length of pretrial detention has become unconstitutionally excessive. *See United States v. El-Hage*, 213 F.3d 74 (2d Cir. 2000). He says application of the *El-Hage* factors supports a finding that his pretrial detention constitutes impermissible punishment rather than valid regulatory action. The Government disputes that application of the *El-Hage* factors supports Meeks' release.

The Due Process Clause of the Fifth Amendment provides that "No person shall...be deprived of life, liberty, or property, without due process of law...." U.S. Const. amend. V. In *United States v. Salerno*, the Supreme Court rejected a challenge to the constitutionality of the Bail Reform Act, holding that the Act was a permissible regulatory restriction on liberty; its purpose was not to punish dangerous individuals, but to prevent danger to the community. 481 U.S. 739, 747 (1987). Thus, "[i]t is well-settled that so long as pretrial detention is administrative rather than punitive," it does not offend due process. *El-Hage*, 213 F.3d at 79. The *Salerno* Court opined:

> We do not minimize the importance and fundamental nature of [an individual's liberty interest]. But, as our cases hold, this right may, in circumstances where the government's interest is sufficiently weighty, be subordinated to the greater needs of society. We think that Congress' careful delineation of the circumstances under which detention will be permitted satisfies this standard.

481 U.S. at 750-51.

Whether a liberty interest can be subordinated to societal needs, that is, whether detention is sufficiently administrative rather than punitive, generally turns on whether a rational, regulatory purpose is assigned to the pretrial detention, and whether the detention appears excessive in relation to that regulatory purpose. *Bell v. Wolfish*, 441 U.S. 520, 539 (1979). The Government argues the length of Meeks' detention is not excessive, and its purpose is rational and regulatory given the severity of the charges and the threat he presents to the community if released.

In *El-Hage*, the Second Circuit set forth a four-part test to determine whether the length of pretrial detention has become unconstitutionally excessive. It said "a court must weigh: (1) its length, (2) the extent of the prosecution's responsibility for delay of

12

the trial, (3) the gravity of the charges, and (4) the strength of the evidence upon which detention was based, *i.e.,* the evidence of risk of flight and dangerousness." 213 F.3d at 79 (citing *United States v. El-Gabrowny*, 35 F.3d 63, 65 (2d Cir. 1994)).

### 1. Length of Pretrial Detention

Meeks points out that he has been incarcerated "for over 16 months and counting." (Doc. # 399 at 9). The Government admits that by the time his case is tried in February 2012, Meeks will have been detained for over 22 months. "While the length of pretrial detention is a factor in determining whether due process has been violated, the length of detention alone is not dispositive and 'will rarely by itself offend due process.'" *El-Hage*, 213 F.3d at 79. In *El-Hage*, the Second Circuit found that the defendant's 30-33 months of pretrial detention was "extraordinary" and the length of his detention weighed heavily in favor of finding a due process violation. 213 F.3d at 76, 79-80. Similarly, here, though the duration of Meeks' pretrial detention is not "wholly unprecedented, especially for a complex case involving an extensive conspiracy," *id.* at 79, this factor weighs in Meeks' favor.

However, the *El-Hage* court held the other three factors favored the government and El-Hage's pretrial detention was regulatory and did not offend due process. *Id.* at 80-81. This Court draws the same conclusion for Meeks.

### 2. Responsibility for Delay

The *El-Hage* court found that the government bore little responsibility for the 30-33 month delay in that case. 213 F.3d at 80. The complexity of the case coupled with the defense counsel's decision not to try certain charges at an earlier date weighed against the defendant's argument that his due process rights were violated. *Id.*; *see*

13

*also United States v. Gabrowny*, 35 F.3d 63, 65 (2d Cir. 1994) (finding that an 18-27 month delay did not violate the defendant's due process rights where "the importance and complexity of the case and the extensive evidence, including numerous tapes in Arabic, reasonably require a lengthy period of pretrial preparation.").

Here, as in *El-Hage*, "[e]veryone involved agrees that the underlying case is of exceptional complexity and that discovery and trial preparation are of necessity extremely time-consuming for both sides." 213 F.3d at 80. The charges of the Superceding Indictment are serious and the discovery process has undoubtedly been complex. Meeks faults the Government for "releasing over 1,000 pages of discovery in the fall (over six months after the original Indictment), and then several hundred more pages in March (almost one year after the Indictment)." (Doc. # 399 at 9). The Government responds that it is not responsible for the delay given the nature and complexity of the charges and the volume of evidence involved. It points out that motions have been answered and resolved promptly and that "[e]very adjournment has been by stipulation of the parties, except the last one, which was on motion of the defense." (Doc. # 413 at 10-11).

Given the complexity of the case and Meeks' acquiescence in the adjournments that have occurred, the Court agrees with the Government that it is not responsible for the delay of trial. This factor weighs against Meeks' argument that continued detention violates his due process rights.

### 3. Gravity of the Charges

Meeks is charged with Seditious Conspiracy, which involves an agreement to oppose the United States Government by force. The Government alleges Meeks and

14

his co-conspirators planned to commit a violent act against law enforcement and discussed possible ways to kill a local officer to intimidate and demoralize others. The plan was to then provoke an armed confrontation with local and federal law enforcement officials who gathered in Michigan for the funeral of the slain officer. Meeks is also charged with Conspiracy to Use Weapons of Mass Destruction, which involves an agreement to use explosive devices against law enforcement officers and vehicles. Finally, he is charged with Carrying, Using, and Possessing a Firearm in Furtherance of a Crime of Violence, in connection with the above-referenced charges.

As already observed and acknowledged by Defendant, these are extremely serious charges. Meeks urges the Court to consider what it alleges to be the weakness of the Government's evidence of guilt. However, this is not a proper consideration at this stage in the proceedings. Discovery is ongoing and the Government is not yet required to prove guilt. Indeed, the purpose of pretrial detention is not to punish Defendant for his guilt--which has not been established--but to ensure the safety of the community and diminish flight risk. The only relevant consideration is the gravity of the charges. Thus, this factor weighs heavily in the Government's favor.

### 4. Strength of Evidence of Risk of Flight and Dangerousness

The final *El-Hage* consideration is the strength of the evidence underlying the detention. This factor was fully addressed by the Sixth Circuit's opinion reversing this Court's order releasing Meeks on bond. While the Sixth Circuit did not address flight risk, a finding of dangerousness is enough to justify pretrial detention, *see* 18 U.S.C. § 3142(e) (requiring pretrial detention unless the court finds a condition or combination of conditions that will ensure *both* the appearance of the person as required *and* the safety

15

of any other person and the community); indeed, "[a] longer pretrial detention is more justifiable for a defendant found to be dangerous than for a defendant who presents only a risk of flight." *El-Hage*, 213 F.3d at 80. "This is because release of the former risks injury to other persons and the community, while release of the latter ordinarily risks only the loss of his conviction and imprisonment." *Id.*

Meeks points out that IED materials and tracer rounds were never found, but as previously discussed, the Sixth Circuit did not rely on the existence of IED materials, and the existence of tracer rounds was only one consideration among a plethora of other evidence the Sixth Circuit found compelling. *See Stone*, 608 F.3d at 949-50, 953. The Sixth Circuit relied in large part on Meeks' statements evincing a desire to kill law enforcement officers and members of Congress and the judiciary, as well as to die by "copicide." *See id.* Meeks does not now suggest he did not make such statements. Therefore, this final factor supports continued detention.

After weighing the length of delay, the government's lack of fault for the delay, the severity of the charges, and the strength of the evidence of dangerousness, the Court concludes continued pretrial detention does not violate Meeks' due process rights.

## IV. CONCLUSION

Defendants do not present new evidence with a material bearing on the risk they pose to any other person and the community sufficient to reopen their bond hearing and release them from pretrial detention. Additionally, the Court rejects Defendants' Second Amendment challenge to their continued pretrial detention, as well as Meeks' Fifth Amendment challenge.

The Court **DENIES** Defendants' motions for bond hearing and release.

**IT IS ORDERED**.

S/Victoria A. Roberts<br>Victoria A. Roberts<br>United States District Judge

Dated: September 22, 2011

> The undersigned certifies that a copy of this document was served on the attorneys of record by electronic means or U.S. Mail on September 22, 2011.
>
> s/Carol A. Pinegar
> Deputy Clerk