UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

                    Plaintiff,              CASE NUMBER: 10-20123
                                            HONORABLE VICTORIA A. ROBERTS
                                            Magistrate Judge Paul J. Komives
v.

DAVID BRIAN STONE, JR., et al.,

                    Defendants.
_____/

**ORDER AFFIRMING IN PART AND REVERSING IN PART
MAGISTRATE JUDGE'S OPINION AND ORDER**

**I.      INTRODUCTION**

This matter is before the Court on Defendant David Brian Stone, Jr.'s objections

to Magistrate Judge Komives' Opinion and Order denying his motions for a bill of

particulars and for disclosure and/or in camera review of grand jury proceedings.

Defendant Thomas Piatek joins in the objections.

**II.     ARGUMENTS**

**A.      The Magistrate's Denial of Disclosure of Grand Jury Proceedings**

On April 25, 2011, Defendant moved for disclosure and/or in camera review of

grand jury proceedings as they relate to Count 14 of the Second Superseding

Indictment.  (Doc. # 309).  Count 14 charges only this Defendant with possessing a

firearm not registered in the National Firearms Registration and Transfer Record.  (Doc.

# 293).  Several other Defendants joined in the motion, even though the Count does not

relate to them.  They are: Michael Meeks (Doc. # 319); Tina Stone (Doc. # 322); Jacob Ward (Doc. # 325); Joshua Stone (Doc. 326); Thomas Piatek (Doc. # 329).  Piatek is the only one who requested disclosure or in camera review of the charges that relate to him.

Stone, Jr.'s motion and objections are moot; the Government recently moved to dismiss Count 14 of the indictment. (Doc. # 441).  However, Piatek's joinder and objections to the magistrate's order are not moot.  The magistrate held Defendants were not entitled to disclosure of the grand jury proceedings because they did not establish that the indictment was facially invalid.  (Doc. # 390 at 5-6).  He held an argument to dismiss an indictment because the evidence before the grand jury was insufficient, is unavailing, and does not meet the requirements of Fed. R. Crim. P. 6(e)(3)(E)(ii), which envisions some irregularity in the grand jury proceeding  (*Id.* at 6).

The magistrate said:

> Here, defendants argue only that the discovery they have been provided to date does not substantiate some of the charges against them.  This alone does not provide a ground on which the indictment may be dismissed, nor does it, without more, suggest any impropriety in the grand jury proceedings which may provide a ground for dismissal.  Defendants do not identify any defects in the grand jury proceeding itself, nor do they identify any particular claims which disclosure of the grand jury proceedings may provide.  In short, defendants "have not pointed to anything in the record which might suggest that the prosecution engaged in improper conduct before the grand jury.  Their claim on this point, therefore, amount[s] to nothing more than unsupported speculation, and this is not enough to constitute a 'particularized need.'"

(*Id.* at 7 (quoting *United States v. Edelson*, 581 F.2d 1290, 1291 (7th Cir. 1978)).

Piatek argues there is no evidence that he committed the offenses outlined in Counts 1 and 2; the magistrate does not rely on authority to support his proposition that

this alone does not provide a basis to dismiss the indictment or open the grand jury proceedings; and the lack of evidence to support the charges should not be "cavalierly vanquished" as speculation of improper grand jury proceedings. (Doc. # 411).

The Government responds, "even if there [was] insufficient competent evidence presented to the grand jury on [the charges in the indictment], that would provide no basis for dismissal of the indictment. Thus there is no basis for disclosure of the grand jury proceedings." (Doc. # 416 at 3-4).

### B. The Magistrate's Denial of Motion for Bill of Particulars

On April 27, 2011, Defendant moved for a bill of particulars. (Doc. # 314). In requesting a bill of particulars, Defendant points out that Count I charges him with: (1) opposing by force the authority of the United States Government, and (2) preventing, hindering, and delaying by force the execution of United States law. He says the indictment does not say what authority the Government exercised that Defendants attempted to prevent; or, what firearms laws the United States endeavored to execute that Defendants agreed to prevent, hinder, and delay by force. Several Defendants joined in the motion: Michael Meeks (Doc. # 320); Tina Stone (Doc. # 323); Jacob Ward (Doc. # 324); Joshua Stone (Doc. # 327); Thomas Piatek (Doc. # 330); and David Stone (Doc. # 342). Piatek makes additional arguments in his joinder. He says the discovery does not demonstrate he committed the acts alleged in the indictment and he is, therefore, entitled to a bill of particulars.

The magistrate held Defendants are not entitled to a bill of particulars. He said the indictment provides enough detail to inform Defendants of the charges against them, minimizes the risk of unfair surprise, and allows them to plead their acquittal or

conviction on the charge in the indictment to bar a subsequent prosecution.  He says that the Government alleged specific objectives and listed specific overt acts in furtherance of the conspiracy; he held Defendants were entitled to no more.

Defendant contends the magistrate erred by completely ignoring the Supreme Court's opinion in *Baldwin v. Franks*, 120 U.S. 678 (1852), which he says defines what it means to oppose by force the authority of the United States Government and prevent, hinder and delay by force the execution of the United States law.  He asserts the Government did not address, with sufficient particularity, what authority it was exercising that he conspired to oppose by force, and which firearms laws it was endeavoring to execute that he conspired to prevent, hinder, and delay by force.

The Government responds that the magistrate's order is not clearly erroneous or contrary to law.  The Government says the magistrate carefully considered *Baldwin* in his Report and Recommendation on Defendant's Motion to Dismiss, which this Court adopted.  The Government also argues the Indictment provides Defendants with substantial information about the "nature, means, and objectives of the charged conspiracy."  (Doc. # 414 at 4).  It states further that there has been extensive discovery which has "provided [D]efendants the substance of the [G]overnment's entire case." (*Id.*).

III.   **ANALYSIS**

A.     **Standard of Review**

A district court will uphold a magistrate judge's order on a non-dispositive motion unless the order is clearly erroneous or contrary to law. 28 U.S.C. § 636(b)(1)(A); Fed. R. Civ. P. 72(a). The clearly erroneous standard does not entitle a reviewing court to

reverse merely because it would have decided the case differently. *Anderson v. Bessemer City*, 470 U.S. 564, 573 (1985).  A finding is "clearly erroneous" only when "'the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.'" *Id.* (quoting *United States v. United States Gypsum Co.*, 333 U.S. 364, 395 (1948)).

**B.** **Defendant Stone, Jr.'s Motion for Disclosure and/or *In Camera* Review of Grand Jury Proceedings is moot given the Government's dismissal of Count 14; the other Defendants are not entitled to disclosure of grand jury proceedings.**

Stone, Jr.'s motion for disclosure of grand jury proceedings related to Count 14 is moot; the Government dismissed this charge.  However, the Court must consider the arguments raised in Piatek's joinder to the motion and in his joinder to Stone, Jr.'s objections to the magistrate's Opinion and Order.

Under Fed. R. Crim. P. 6(e), grand jury proceedings are to be kept secret except under circumstances outlined in Rule 6(e)(3).  Rule 6(e)(3)(E)(ii) provides,

> The court may authorize the disclosure–at a time, in a manner, and subject to any other conditions that it directs–of a grand-jury matter...at the request of a defendant who shows that a ground may exist to dismiss the indictment because of a matter that occurred before the grand jury.

This rule codifies the "'long-established policy that maintains the secrecy of the grand jury proceedings in the federal courts.'" *Dennis v. United States*, 384 U.S. 855, 869 (1966) (quoting *United States v. Proctor & Gamble Co.*, 356 U.S. 677, 681 (1958)).

In *Douglas Oil Co. of California v. Petrol Stops Northwest*, the Supreme Court outlined the standard for determining when the "traditional secrecy" of the grand jury may be breached: "Parties seeking grand jury transcripts under Rule 6(e) must show that the material they seek is needed to avoid a possible injustice in another judicial

proceeding, that the need for disclosure is greater than the need for continued secrecy, and that their request is structured to cover only material so needed." 441 U.S. 211, 222 (1979). These prerequisites are demanding and "secrecy will not be broken absent a compelling necessity for the materials." *In re Grand Jury 95-1*, 118 F.3d 1433, 1437 (10th Cir. 1997). Courts must weigh the need for disclosure against the public interest in secrecy and the burden is on the defendant to demonstrate the need for disclosure outweighs the public's interest in secrecy. *Douglas Oil*, 441 U.S. at 223.

In *In re Eyecare Physicians of Am.*, the Seventh Circuit identified the interests served by safeguarding the confidentiality of jury proceedings:

> "*If pre-indictment proceedings were made public, many prospective witnesses would be hesitant to come forward voluntarily.*" *Lucas v. Turner*, 725 F.2d 1095, 1100 (7th Cir. 1984) (emphasis added). "*Witnesses who appear before the grand jury would be less likely to testify fully and frankly, as they would be open to retribution as well as to inducements. There would also be the risk that those about to be indicted would flee, or would try to influence individual grand jurors to vote against the indictment.*" *Id.* (emphasis added). "*Grand jury secrecy...is as important for the protection of the innocent as for the pursuit of the guilty.*" [*In re Grand Jury Proceedings*, 942 F.2d 1195, 1199 (7th Cir. 1991)] (emphasis added).

100 F.3d 514, 518 (7th Cir. 1996).

Piatek says he is entitled to review the grand jury proceedings because the discovery the Government provided him does not say he participated in the conspiracies alleged in Counts 1 and 2. However, the law discussed by the magistrate makes clear that a mere perception of a lack of evidence to support the indictment does not establish particularized need for grand jury transcripts, and does not warrant disclosure of the proceedings. For example, in *Costello v. United States*, the Supreme Court opined:

6

> If indictments were to be held open to challenge on the ground that there was inadequate or incompetent evidence before the grand jury, the resulting delay would be great indeed. The result of such a rule would be that before trial on the merits a defendant could always insist on a kind of preliminary trial to determine the competency and adequacy of the evidence before the grand jury. This is not required by the Fifth Amendment. An indictment returned by a legally constituted and unbiased grand jury, like an information drawn by the prosecutor, if valid on its face, is enough to call for trial of the charge on the merits.

350 U.S. 359, 363 (1956); see also *United States v. Powell*, 823 F.2d 996, 1000 (6th Cir. 1987) ("The Fifth Amendment does not require federal courts to examine the sufficiency of the evidence upon which a grand jury relies to bring a true bill."); *United States v. Short*, 671 F.2d 178, 181-83 (6th Cir. 1982) (same).

A defendant is entitled to disclosure under rule 6(e) only if he identifies a particularized defect in the grand jury proceedings or has specific evidence--beyond a general argument regarding the sufficiency of the evidence to support the indictment-- that the Government engaged in improper conduct before the grand jury. (*See* Doc. # 390 at 6-7 (citing cases)). In *Powell*, the Sixth Circuit held a defendant must allege that the grand jury is "'biased or illegally constituted.'" 823 F.2d at 1001 (quoting *Short*, 671 F.2d at 182). It stated, bias "only 'refers to a grand jury which is predisposed in one way or another....' (Citation omitted). A claim that the grand jury becomes biased because the prosecutor presented evidence which an appellant considers inadequate or incompetent 'cannot be reconciled with the Supreme Court's holding' in *Costello*. (Citation omitted)." 823 F.2d at 1001.

Moreover, as noted by the magistrate, because the defendant bears the burden under Rule 6(e) to show a "particularized need" for disclosure, *Pittsburgh Plate Glass Co. v. United States*, 360 U.S. 395, 400 (1959), it is not enough for Piatek to allege that

the insufficiency of the evidence suggests prosecutorial misconduct or other improper conduct before the grand jury.  The magistrate is correct that Rule 6(e) does not permit a defendant to engage in a "fishing expedition" in search of some evidence of grand jury bias, prosecutorial misconduct, or some other possible injustice.  *See Grand Jury 95-1*, 118 F.3d at 1437.

Piatek does not allege, or present evidence to suggest, that the grand jury was biased or illegally constituted; he simply challenges the sufficiency of the evidence to support the indictment.  Nor does he provide a particularized need for disclosure that outweighs the strong public interest in maintaining secrecy in a case which involves multiple defendants and serious charges of plans to do violence.  The magistrate did not clearly err in denying Defendants' motion for disclosure and/or in camera review of the grand jury proceedings.

### C. Defendants are entitled to know how they prevented, hindered, and delayed by force the execution of "federal laws regarding the sale, purchase, receipt, possession, and use of firearms and destructive devices."

Under Fed. R. Crim. P. 7(f):

The court may direct the government to file a bill of particulars.  The defendant may move for a bill of particulars before or within 14 days after arraignment or at a later time if the court permits.  The government may amend a bill of particulars subject to such conditions as justice requires.

A bill of particulars serves three purposes: (1) to inform the defendant of the nature of the charge against him to prepare for trial; (2) to avoid or minimize the danger of surprise at the time of trial; and (3) to enable him to plead his acquittal or conviction to bar another prosecution for the same offense when the Indictment is too vague and

indefinite for such purposes.  *United States v. Brimley*, 529 F.2d 103, 108 (6th Cir. 1976).

The decision to grant or deny a bill of particulars is in the sound discretion of the district court.  *United States v. Bortnovsky*, 820 F.2d 572, 574 (2d Cir. 1987). "Generally, if the information sought by defendant is provided in the indictment or in some alternate form, no bill of particulars is required."  *Id.*  Furthermore, "[a] bill of particulars may not be used to compel the government to provide the essential facts regarding the existence and formation of a conspiracy."  *United States v. Rosenthal*, 793 F.2d 1214, 1227 (11th Cir. 1986).

There is merit to Defendants' challenge to Count 1 of the Indictment, charging seditious conspiracy.  While that count details the means and methods used to further the conspiracy, there are two unlawful actions charged but the facts underlying the charges only appear to support one.  Namely, Defendants are charged with: conspiring to (1) oppose by force the authority of the United States Government and (2) prevent, hinder, and delay by force the execution of federal laws regarding the sale, purchase, receipt, possession, and use of firearms and destructive devices.

The indictment specifies many ways in which Defendants allegedly conspired to oppose the Government's authority.  The Government alleges the Hutaree planned to kill a law enforcement agent with the express intention to draw the attention of government officials, diminish the ranks of law enforcement, and render law enforcement ineffective.  The indictment alleges that after the Hutaree took violent action against the Government, prompting a response by law enforcement,

HUTAREE members would retreat to one of several 'rally points' where

the HUTAREE would conduct operations against the government and be prepared to defend in depth with trip-wired and command detonated anti-personnel IEDs, ambushes, and prepared fighting positions. The HUTAREE believed and intended that such an engagement would be a catalyst for a more widespread uprising against the United States Government.

(Doc. # 293, Second Superseding Indictment ¶ 4).

The Indictment also states ways in which the conspirators allegedly planned and trained for armed conflict with local, state, and federal law enforcement, including the acquisition of firearms and participation in "military-style training."  (*Id.* at ¶ 5).  The indictment alleges David Stone and others planned to kill a law enforcement officer in hopes that officers from throughout the nation would come to Michigan for the funeral; the Hutaree would then attack law enforcement vehicles during the funeral procession with homemade mortars, IEDs, and EFPs.  (*Id.*).

Defendants fault the Government for not indicating what "positive assertion of authority by the Government," *Baldwin*, 120 U.S. at 693, they conspired to oppose through these actions.  However, this information can be gleaned, and the necessary inferences made, by reviewing the allegations of the indictment.  For example, certainly conducting operations against the Government at rally points, with explosive devices and firearms (a force brought to resist the Government), after a response by law enforcement has been provoked by some violent action (a positive assertion of authority), meets the requirements of the statute.  Unlike in *Baldwin*, the force Defendants allegedly conspired to exert was against the Government itself, not "a class of persons who had a right to look to the government for protection against such wrongs."  *Id.*

Prior to trial, "[a] defendant is only entitled to know those central facts that will enable him to conduct his own investigation of the transactions that resulted in the charges against him." *United States v. Stroop*, 121 F.R.D. 269, 272 (E.D.N.C. 1988). "Moreover, a defendant is 'not entitled to compel the government to describe in detail the manner in which the crime was committed, thereby forcing the prosecution to fix irrevocably the perimeters of its case in advance of trial.'" *Id.* (quoting *United States v. Manetti*, 323 F.Supp. 683, 696 (D. Del. 1971)). The facts provided in the indictment underlying the alleged conspiracy to oppose the authority of the Government are sufficient to enable Defendants to conduct their own investigation. Thus, the magistrate did not clearly err in holding that this portion of the indictment was sufficiently particularized.

However, Defendants' second argument is more persuasive. They say the indictment does not indicate how they conspired to prevent, hinder, and delay the Government's execution of federal firearms laws in furtherance of the seditious conspiracy charge.

*Baldwin* is instructive. Defendant Baldwin was charged with conspiring to deprive Chinese aliens living in the United States of equal protection of the laws by violently driving them from their homes and legitimate businesses. 120 U.S. at 680. Baldwin was charged under the Seditious Conspiracy statute in effect at the time, which made it unlawful for two or more persons "to conspire, by force, to prevent, hinder, or delay the execution of any law of the United States...." *Id.* at 682 (citation and internal quotation marks omitted). The Court observed that the treaty between the United States and China required the United States Government to devise measures to protect Chinese

citizens residing in the United States and "to secure to them the same rights, privileges, immunities, and exemptions as may be enjoyed by the citizens or subjects of the most favored nation, and to which they are entitled by treaty" in the face of "ill treatment at the hands of any other persons...." *Id.* at 683 (citation and internal quotation marks omitted).

The Court held that *Baldwin* could not be charged with Seditious Conspiracy, which "evidently implies force against the government as a government." *Id.* at 693. In focusing on the provision of the statute that proscribed "preventing, hindering or delaying the 'execution' of any law of the United States," the Court advised, "[t]here must be a forcible resistance of the authority of the United States while endeavoring to carry the laws into execution." *Id.* (emphasis added). Defendants are correct that the indictment does not specify which laws the Government would be attempting to execute that they would be forcibly opposing by carrying out the conspiracy. In *Baldwin* the Court opined:

> The United States are bound by their treaty with China to exert their power to devise measures to secure the subjects of that government lawfully residing within the territory of the United States against ill treatment, and, if in their efforts to carry the treaty into effect they had been forcibly opposed by persons who had conspired for that purpose, a state of things contemplated by the statute would have arisen.

120 U.S. at 693-94.

*Baldwin* teaches that for this provision to apply, Defendants must conspire to forcibly oppose the Government's efforts to carry a particular law into effect. In the hypothetical scenario described in *Baldwin*, "a state of things contemplated by the statute would have arisen," if Baldwin attempted to thwart the United States from

protecting the rights of Chinese citizens residing there, under the treaty between China and the United States, rather than himself depriving them of their rights.

The indictment here does not specify: (1) which federal firearms and explosive devices laws are at issue; (2) how the Government would be attempting to execute these laws when the conspirators attacked; and (3) how the attack constitutes forcible opposition to the execution of these laws. The Government notes that it provided Defendant voluminous discovery; this is not always enough. In *Bortnovsky*, the Second Circuit held that despite the Government's cooperation in turning over thousands of documents to defense counsel during discovery, "[t]he relevance of key events [to the crimes charged] was shrouded in mystery at the commencement of and throughout the trial." 802 F.2d at 575. Similarly, here, the relevance of the overt acts specified in the indictment to the crime of conspiring "to prevent, hinder, and delay by force the execution of the United States law, including federal laws regarding the sale, purchase, receipt, possession, and use of firearms and destructive devices" (Second Superseding Indictment at 6) is a mystery.

For this reason, the magistrate clearly erred when he held Defendant was not entitled to a bill of particulars clarifying this portion of the indictment. Without clarification, there is a good chance Defendant will be ill- prepared for trial, and/or unfairly surprised by the evidence against him. *See Bortnovsky*, 820 F.2d at 574-75 (the district court abused its discretion in denying a bill of particulars where the defendants were not able to determine which among many facially lawful transactions were alleged to be criminal); *United States v. Baker*, 262 F.Supp. 657, 673 (D.D.C. 1966) (defendant entitled to a bill of particulars indicating how and through what specific

13

conduct he stole, took, and carried away the money referred to in the indictment where the same conduct against the same victim comprised two distinct charges). Therefore, the Government must file a single bill of particulars that provides the information outlined in the preceding paragraph.

## IV.     CONCLUSION

The court **AFFIRMS IN PART** and **REVERSES IN PART** the magistrate's Opinion and Order. Stone, Jr.'s request for disclosure of grand jury proceedings is moot; the other Defendants are not entitled to disclosure. All Defendants are entitled to know the basis for the Government's allegation that they conspired to prevent, hinder, and delay by force the execution of federal laws regarding the sale, purchase, receipt, possession, and use of firearms and destructive devices. Accordingly, the Government must provide a bill of particulars concerning the allegations in Count 1, and must do so within 21 days of the filing of this Order.

**IT IS ORDERED.**

S/Victoria A. Roberts
Victoria A. Roberts
United States District Judge

Dated: October 6, 2011

The undersigned certifies that a copy of this document was served on the attorneys of record by electronic means or U.S. Mail on October 6, 2011.

S/Linda Vertriest
Deputy Clerk