UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,    CASE NUMBER: 10-20123
            HONORABLE VICTORIA A. ROBERTS

v.

DAVID BRIAN STONE, ET. AL.,

    Defendant.
                  /

**ORDER DENYING DEFENDANTS' MOTION TO EXCLUDE
EXPERT TESTIMONY REGARDING LATENT FINGERPRINT IDENTIFICATION**

**I. INTRODUCTION**

This matter is before the Court on Defendant Joshua Stone's Motion to Exclude Expert Testimony Regarding Latent Fingerprint Identification. (Doc. # 537). Defendants Michael Meeks, Thomas Piatek, and David Stone join.

The Court **DENIES** the motion.

**II. BACKGROUND**

Defendants are charged with: (1) Seditious Conspiracy (18 U.S.C. § 2384); (2) Conspiracy to use Weapons of Mass Destruction (18 U.S.C. § 2332a(a)(2)); (3) Use and Carrying of a Firearm During and in Relation to a Crime of Violence (18 U.S.C. § 924(c)(1)); and (4) Possessing a Firearm in Furtherance of a Crime of Violence (18 U.S.C. § 924(c)(1)). In addition, Defendants David Stone, David Stone, Jr., and Joshua Stone are charged with various other weapons-related offenses.

The Government intends to call Federal Bureau of Investigation Forensic

1

Examiner Jeremy P. Wintz as an expert witness in latent fingerprint identification. In its Rule 16(a)(1)(G) summary of Mr. Wintz's proposed testimony and opinions, the Government reveals that four latent prints were found on a document seized from the Tomer Road residence of David Stone, Joshua Stone, and Tina Stone containing instructions for making a "Funnel Shape Charge." Additionally, latent fingerprints and palm prints were discovered on rifles seized from the residence. Mr. Wintz examined the prints using the Analysis, Comparison, Evaluation, and Verification (ACE-V) methodology, and concluded that two of the fingerprints on the document belonged to Joshua Stone and two belonged to David Stone. He also concluded that the prints on the weapons belonged to David Stone.

### III.   APPLICABLE LAW AND ANALYSIS

####    A.   General Principles

"The Federal Rules of Evidence embody a 'strong and undeniable preference for admitting any evidence having some potential for assisting the trier of fact.'" *Holbrook v. Lykes Bros. S.S. Co., Inc.*, 80 F.3d 777, 780 (3d Cir. 1996) (quoting *DeLuca v. Merrell Dow Pharms., Inc.*, 911 F.2d 941, 956 (3d Cir. 1990)). Fed. R. Evid. 702 governs the admissibility of expert testimony. This rule specifically embraces this preference and has a liberal policy of admissibility. *Id.*

Under Rule 702, as amended December 1, 2011:

A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the

> expert has reliably applied the principles and methods to the facts of the case.

FED. R. EVID. 702. The rule "embodies three distinct substantive restrictions on the admission of expert testimony: qualifications, reliability, and fit." *Elcock v. Kmart Corp.*, 233 F.3d 734, 741 (3d Cir. 2000). The evidence proponent – here, the Government – has the burden to establish its admissibility by a preponderance of the evidence. *See Daubert v. Merrell Dow Pharms.*, 509 U.S. 579, 593 n. 10 (1993).

In *Daubert*, the Supreme Court held that judges are to act as gatekeepers with respect to the admissibility of expert testimony. *Avery Dennison Corp. v. Four Pillars Enterprise Co.*, 45 Fed. Appx. 479, 483 (6th Cir. 2002). The Court held that a judge must assess the reasoning and methodology underlying the expert opinion testimony to determine whether the opinion is scientifically valid, *i.e.*, whether it rests on "good grounds" based on what is known (reliability) and can properly be applied to the factual issues in dispute (relevance) before admitting the opinion. *See Daubert,* 509 U.S. at 590-93. "The relevance inquiry ensures 'that there is a fit between the testimony and the issue to be resolved at trial.'" *Rondigo, L.L.C. v. Casco Twp., Michigan*, 537 F.Supp.2d 891, 892 (E.D. Mich. 2008) (quoting *Greenwell v. Boatwright*, 184 F.3d 492, 496 (6th Cir. 1999)). The "reliability step focuses on the methodology and principles that form the basis for the testimony." *Id.* at 893 (citing *Boatwright*, 184 F.3d at 497).

The *Daubert* Court emphasized that under Rule 702, the testimony of a scientific expert witness must be grounded in the methods and procedures of science and must be more than unsupported speculation or subjective belief. 509 U.S. at 590-91. It articulated a non-exclusive list of factors for district courts to weigh when considering

the admissibility of scientific expert testimony: (1) whether the expert's theory or technique can be, and has been, tested; (2) whether the theory or technique has been subjected to peer review and publication; (3) the known or potential rate of error; (4) the existence and maintenance of standards controlling the technique's operation; and (5) whether the theory or technique is generally accepted in the relevant scientific community. *Id.* at 593-94.

In *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 150 (1999), the Supreme Court stressed that the factors listed in *Daubert* may or may not be useful to assess the reliability of expert testimony and that the Rule 702 inquiry is a flexible one. The pertinence of each factor depends on the circumstances of the particular case. *Id.* "[T]he trial judge must have considerable leeway in deciding in a particular case how to go about determining whether particular expert testimony is reliable. That is to say, a trial court should consider the specific factors identified in *Daubert* where they are reasonable measures of the reliability of expert testimony." *Id.* at 152. The *Kumho Tire* Court extended *Daubert*'s general holding with respect to scientific evidence to technical and other specialized knowledge.

### B.     Parties' Arguments

Defendants ask the Court to exclude Mr. Wintz's latent fingerprint identification testimony. They say poor quality of latent fingerprints creates problems in the identification process. They acknowledge that in *United States v. Crisp*, 324 F.3d 261 (4th Cir. 2003), the Fourth Circuit upheld the admission of fingerprint identification evidence, stating such evidence has been held reliable and admissible in this country since 1911. Defendants say two factors warrant departure from *Crisp*: (1) the Fourth

4

Circuit erroneously relied on the last *Daubert* factor (general acceptance) to the exclusion of all others, as noted in Judge Michael's dissenting opinion, and (2) the opinion came before the Committee on Identifying the Needs of Forensic Science Community at the National Academy of Sciences ("NAS Committee") issued a report entitled "Strengthening Forensic Science in the United States: A Path Forward" ("NAS Report"), that calls into question the validity of fingerprint testimony. They also say, application of the *Daubert* factors to latent fingerprint examination reveals fingerprint identification evidence is unreliable and inadmissible. Defendants' objections go to the reliability of latent fingerprint identification evidence, not to its relevance.

In response, the Government says Defendants do not cite case law or weaknesses in Mr. Wintz's fingerprint analysis that warrant exclusion of his testimony. The Government points out that courts have uniformly upheld the admissibility of fingerprint testimony under *Daubert*. It says the need for more research about, and the existence of some scholarly criticism of, fingerprint analysis does not warrant exclusion. It says Mr. Wintz used the ACE-V method of fingerprint analysis and courts have uniformly found this method reliable. It says Defendants can address their concerns about the reliability of the ACE-V fingerprint identification method on cross-examination.

**C.     Discussion**

Defendants do not challenge Mr. Wintz's proposed testimony based on his individual reasoning or testing methodology; rather, Defendants launch a wholesale attack on latent fingerprint identification evidence in general, calling it untrustworthy. Such an unspecified challenge to a well-established area of expertise does not warrant a *Daubert* hearing. *See, e.g.*, *United States v. Mitchell*, 365 F.3d 215, 246 (3d Cir.

5

2004) (citing *Kumho Tire*, 526 U.S. at 152) (observing that the Supreme Court has emphasized the discretion district courts have to determine how to test an expert's reliability and saying a district court does not abuse its discretion by dispensing with a *Daubert* hearing if no novel challenge to latent fingerprint evidence is raised).  Under Fed. R. Evid. 104(c)(3), the Court must conduct a hearing when "justice so requires." Where, as here, the challenged form of expertise is familiar, and no novel objection is raised, justice does not require a pre-trial hearing.  *See, e.g.*, *Crisp*, 324 F.3d at 268 ("Under *Daubert*, a trial judge need not expend scarce judicial resources reexamining a familiar form of expertise every time opinion evidence is offered); *United States v. Cooper*, 91 F.Supp.2d 79, 82 (D.D.C. 2000) ("Certainly the interests of justice do not require the Court to conduct lengthy hearings when the admissibility of well-established principles can be readily determined at trial.").

     Defendants rely solely on journal articles and a dissenting opinion to support their proposition that latent fingerprint analysis is inherently untrustworthy under the five factors articulated in *Daubert*.  On the other hand, the Government provides ample authority to support a conclusion that latent fingerprint identification evidence is not so inherently untrustworthy that it must be declared inadmissible.  While the Sixth Circuit has not ruled on the precise issue, the Government's cases from other circuits provide strong support for its position.

     This is especially true where Defendants do not lodge specific objections about Mr. Wintz's qualifications and/or methodology; they object more generally to the continuing viability of latent fingerprint evidence in the face of the NAS Committee's call for more research.  Assuming *arguendo* that Defendants accurately represent the

contents of the NAS Report (which they do not provide for Court review), the Court is nonetheless unpersuaded that the NAS Report provides a sufficient basis to exclude Mr. Wintz's testimony. In *Crisp*, the Fourth Circuit addressed a similar argument. It acknowledged the need for further research into fingerprint analysis, 324 F.3d at 270, but it concluded that the need for more research does not require courts to take the "drastic step" of excluding a "long-accepted form of expert evidence" and "bedrock forensic identifier." *Id.* at 268, 270.

Wholesale objections to latent fingerprint identification evidence have been uniformly rejected by courts across the country. For example, in *United States v. John*, the Fifth Circuit stated:

> We agree that in most cases, absent novel challenges, fingerprint evidence is sufficiently reliable to satisfy rule 702 and *Daubert.* "Fingerprint identification has been admissible as reliable evidence in criminal trials in this country since at least 1911." In terms of specific *Daubert* factors, the reliability of the technique has been tested in the adversarial system for over a century and has been routinely subject to peer review. Moreover, as a number of courts have noted, the error rate is low.

597 F.3d 263, 274-75 (5th Cir. 2010) (citing cases) (footnotes omitted).

The First Circuit, in *United States v. Pena*, 586 F.3d 105 (1st Cir. 2009), acknowledged the shortcomings of the ACE-V method, but nevertheless upheld the district court's decision that fingerprint identification testimony was sufficiently reliable under *Daubert*. The First Circuit said, "[t]hough acknowledging the lack of minimum points and relative subjectivity of certain ACE-V protocols, including that followed by the FBI, courts have nonetheless found that most of the *Daubert* factors support admitting latent fingerprint identification evidence obtained pursuant to the ACE-V method." *Id.* at

110-11. It found that against this backdrop, "'it is difficult to discern any abuse of discretion' when the district court decides to admit expert testimony that relies on the ACE-V method." *Id.* at 111 (quoting *United States v. Mahone*, 453 F.3d 68, 71 (1st Cir. 2006)).

In *United States v. Baines*, 573 F.3d 979 (10th Cir. 2009), the Tenth Circuit addressed a defendant's contention that latent fingerprint analysis is inherently unreliable under *Daubert*. After discussing each *Daubert* factor in relation to latent fingerprint analysis, the Tenth Circuit held that the district court did not abuse its discretion by admitting the fingerprint expert's testimony. 573 F.3d at 990-92; *see also United States v. Janis*, 387 F.3d 682, 690 (8th Cir. 2004) (affirming district court's decision to admit fingerprint expert testimony where the district court first made a reliability determination); *United States v. Havvard*, 260 F.3d 597, 600 (7th Cir. 2001) (holding the district court did not err in admitting latent fingerprint identification evidence where the court concluded that fingerprinting techniques have been tested in the adversarial system, individual results are routinely subjected to peer review for verification, and the probability of error is exceptionally low).

These cases all hold that latent fingerprint evidence bears sufficient indicia of reliability under *Daubert* to overcome Rule 702's admissibility hurdle. Defendants point to nothing unique about Mr. Wintz's qualifications, principles, and/or methodology which raise concerns about the reliability of his proposed testimony. Consequently, this Court finds no basis to expand on, or depart from, the holdings of numerous courts that latent fingerprint identification evidence is reliable under the five-factor test developed by the Supreme Court in *Daubert*. *See Kumho Tire*, 526 U.S. at 152 (in ordinary cases the

reliability of an expert's methods may properly be taken for granted); *cf. United States v. Sherwood*, 98 F.3d 402, 408 (9th Cir. 1996) (district court did not commit clear error by declining to engage in a *Daubert* analysis where the defendant admitted that the fingerprint expert's technique is the generally-accepted method for testing fingerprints and that fingerprint comparison has been subjected to peer review and publication).

Defendants' criticisms of the ACE-V procedure and concerns about the risks of error such as false positive identifications go to the weight of the evidence and can be explored on cross-examination and/or through presentation of competing evidence. *See United States v. George,* 363 F.3d 666, 673 (7th Cir. 2004) ("Having found fingerprint analysis to be reliable, the issue as to whether particular prints can be connected to a particular defendant goes to the weight and credibility of the evidence. These are issues best left to the finder of fact...."); *Cooper*, 91 F.Supp.2d at 82-83 (denying without prejudice a motion for *Daubert* hearing where the movant did not indicate why the matter could not be properly addressed at trial).

In *Cooper*, the D.C. District Court observed:

> When a principle is well-established, the questions are simply whether the expert properly applied the established scientific principle to the facts and whether the expert's credibility is compromised for reasons such as bias. These are matters that a jury usually is competent to evaluate after cross-examination and presentation of competing expert testimony. Accordingly, where expert testimony is based on well-established science, the courts generally have concluded that reliability problems go to weight, not admissibility.

91 F.Supp.2d at 82 (quoting 29 Charles A. Wright and Victor James Gold, *Federal Practice & Procedure* § 6266, at 265).

The gatekeeper role must not supplant the adversary system or the role of the

9

jury. Indeed, the *Daubert* Court itself said, "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." 509 U.S. at 596.

## IV. CONCLUSION

Defendants' motion is **DENIED** without prejudice. The Court may revisit the issue during trial if Defendants raise specific objections to the reasoning and methods that form Mr. Wintz's opinion.

**IT IS ORDERED.**

                                              /s/ Victoria A. Roberts
                                              Victoria A. Roberts
                                              United States District Judge

Dated: January 25, 2012

---

The undersigned certifies that a copy of this document was served on the attorneys of record by electronic means or U.S. Mail on January 25, 2012.

S/Linda Vertriest
Deputy Clerk

---