UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

                Plaintiff,              CASE NUMBER: 10-20123
                                          HONORABLE VICTORIA A. ROBERTS

v.

DAVID BRIAN STONE, et al.,

                Defendant.
_____/

## ORDER

## I.    INTRODUCTION

Before the Court is Defendant Thomas William Piatek's Renewed Motion in Limine regarding the admissibility of conspiratorial literature  (Doc. 629).  The Court held an evidentiary hearing on January 31, 2012 to review the proffered evidence and consider counsels' arguments.  During the hearing, the Court ordered any defense counsel who had particular objections to proposed government exhibits concerning conspiratorial literature to file specific objections by February 2, 2012.  Defendants David Brian Stone, Joshua Stone, and Tina Stone filed joint objections (Doc. 652).  Defendant Michael Meeks filed separate objections (Doc. 645).  Defendant Kristopher Sickles orally objected to one particular exhibit during the January 31 hearing.  Lastly, Defendant Stone, Jr. filed general objections and adopted the arguments of co-counsel (Doc. 650).

At the hearing, counsel for the United States said they intended to have a seizing agent summarize the concepts in seized books for the jury.  The Court ordered

supplemental briefing on the authority of a seizing agent to provide summaries of seized books (Doc. 638). The Government filed its supplemental brief (Doc. 643) on February 2, 2012; Defendant Piatek replied on February 6, 2012 (Doc. 656).

The Court considered the parties' arguments and conscientiously reviewed the proposed exhibits. This Order first examines the law regarding the admissibility of conspiratorial literature and the ability of a seizing agent to testify to summaries of concepts in seized books. The Court then considers Defendants' specific objections.

## II. LAW AND ARGUMENTS

### A. Admissibility of Anti-Government or Conspiratorial Literature

The Court's Order of January 19, 2012 denying, without prejudice, Defendants' motion for an evidentiary hearing (Doc. 605) stated the standard for admissibility of conspiratorial or anti-government literature. That Order is incorporated here by reference.

In short, the Court found that evidence of a defendant's reading habits is not categorically inadmissible in a criminal trial. Courts have found this evidence properly admissible for a variety of purposes, including (1) to indicate intent, *e.g. United States v. Anderson*, 353 F.3d 490, 504 (6th Cir. 2003); (2) to indicate motive, *e.g. United States v. Salameh*, 152 F.3d 88, 111 (2d Cir. 1998); (3) to establish a relationship among co-conspirators, *e.g. United States v. Giese*, 597 F.2d 1170, 1185 (9th Cir. 1979); (4) to indicate knowledge that defendants had the ability to carry out the goals of the conspiracy, *e.g. United States v. Ibrahim*, No. 07-543, 2011 WL 1868563 (S.D.N.Y. May 13, 2011); (5) to refute the theory that defendants were engaged in "mere puffery," *e.g.*

*United States v. Parr*, 545 F.3d 491, 502 (7th Cir. 2008).

The Court noted, though, that courts are reluctant to admit evidence of a person's literary tastes against him at trial, because "a defendant's choice of reading material will rarely have a particularly significant probative value." *United States v. Waters*, 627 F.3d 345, 355 (9th Cir. 2010). If the Court does determine that a piece of literature is relevant and offered for a non-hearsay purpose, it must "scrupulously review" it and "make a conscientious assessment" that its probative value is not outweighed by the risk of unfair prejudice. Only after performing this rigorous review may a court admit literary evidence. And, as further caution against the introduction of extraneous and prejudicial information, the Court may admit only relevant passages of books and manuals. *See Parr*, 545 F.3d at 502.

In its supplemental brief, the Government says the recent decision in *United States v. Brown*, —F.3d—, Nos. 09-2402, 10-1081, 2012 WL 149484 (1st Cir. Jan. 19, 2012), decided the same day as the Court's January 19, 2012 Order, is "almost exactly on point" and affects the above standard. In *Brown*, the defendants, husband and wife, engaged in a nine month stand-off with United States Marshals after failing to appear for sentencing on convictions for federal tax crimes. They holed themselves up in a cabin in New Hampshire and threatened federal law enforcement tasked with their arrest. After the defendants' arrest, federal agents searched their property and found "a vast supply of explosives, firearms, and ammunition, including rifles, armor piercing bullets, pipe bombs, and bombs nailed to trees." *Id.* at *2. The defendants were tried and convicted this time for conspiring to prevent federal officers from discharging their duties, conspiring to assault federal officers, and various other weapons charges.

Husband and wife were tried separately. During the wife's trial, the district court admitted several books into evidence that Marshals recovered from a shelf in the defendants' home. The titles were: *The Anarchist Handbook*, *Guerilla Warfare and Special Forces Operations*, *Unconventional Warfare Devices and Techniques*, *Booby Traps*, and *Modern Chemical Magic*. The wife challenged admission of the books on the grounds of lack of foundation and unfair prejudice under Fed. R. Evid. 403. The First Circuit found that the district court did not abuse its discretion in admitting the books. The Court held that, at a minimum, the books "were relevant to show that [the defendant] had knowledge of how to conduct armed resistance against the government and the factual implementation of such resistance." *Id.* at 12. Further, this probative value was not substantially outweighed by unfair prejudice. Lastly, the Court found that the fact that the books were found in the hallway of the defendants' house was sufficient foundation to introduce them against the wife. *Id.* The Court stated, "The books' location is sufficient to raise the inference that the books were [the wife's] or at the least owned by [wife and husband] together." *Id.*

The Government says *Brown* supports its position in two ways: (1) it clarifies that books' location in a defendant's home provides sufficient foundation to admit those books against the defendant; and (2) it is further support that books may be admitted to prove an individual defendant's motive, knowledge, and intent.

Defendant discredits *Brown* as an outlier, arguing that to the extent it authorizes "wholesale admission" of various pieces of literature, and to the extent it dispenses with any nexus requirement between the items and the accused, it should not be followed.

First, the Court agrees with *Brown* that discovery of books in a defendant's

residence is a sufficient nexus to meet the foundational requirement that the books belong to the defendant. Mr. Piatek says there is no evidence regarding how long he resided in his home when the books were seized. He also says he had not been home for several days when his residence was raided, and that his brother also resided there. Notably, Mr. Piatek does not argue that the books were found in a part of his residence occupied primarily by his brother. Nor does Mr. Piatek argue that the books were placed in his residence during his brief absence before the raid. How long Mr. Piatek resided at his home is not relevant, so long as the home was his residence at the time of the raid. The Court agrees with the Government that a proper foundation exists to admit books seized from Mr. Piatek's residence against him. In the very least, assuming Mr. Piatek shared a residence with his brother, the Court can infer that the books were owned by Mr. Piatek and his brother jointly. *See Brown*, 2012 WL 149484 at *12.

Second, the Court does not believe that *Brown* is inconsistent with the standard for admissibility previously announced in the Court's January 19, 2012 Order. Contrary to Defendant Piatek's assertion, *Brown* does not authorize the "wholesale admission" of various pieces of literature. Although it appears that the court in *Brown* admitted several books in their entirety, there is no evidence that the trial judge did not review all of the books' contents before determining that the contents were relevant and not unduly prejudicial. The court made a specific finding that the books were relevant to show the defendant's knowledge of how to conduct armed resistance. *Brown* at * 12. Similarly, the Sixth Circuit held that the admission of several books, apparently in their entirety, was not an abuse of discretion where the books were probative of a

defendant's attempt to distribute cocaine. *See United States v. Rey*, 923 F.2d 1217, 1221-22 (6th Cir. 1991).

These cases do not change the guiding rule: the trial court must examine the complete contents of books and exclude portions which are not relevant or are unduly prejudicial. *See Parr*, 545 F.3d at 502. However, these cases do dispel any notion that books are never admissible in their entirety. The rule that can be distilled from the case law, and which this Court applies to the proposed exhibits in this case, is that the trial court must consider the admissibility of literature on a case-by-case basis, taking care to review each document in its entirety for relevance and prejudice before admitting it, or the relevant portions of it, into evidence. *See United States v. Waters*, 627 F.3d 345, 357 (9th Cir. 2010).

## B.    The Ability of a Seizing Agent to Summarize the Contents of Seized Books and Videos

The Government's Proposed Exhibit List contains several books and videos that it does not intend to admit into evidence in their entirety. Instead, the Government says it would like to mark the items for identification, in certain instances submit scanned images of the cover, table of contents, or other excerpts into evidence, and have the seizing agent summarize the concepts in the book/video. At the January 31, 2012 evidentiary hearing, counsel for Defendant raised concerns about the ability of a seizing agent, a lay witness, to testify to concepts in literature. The Court ordered supplemental briefing.

Federal Rule of Evidence 1006 states that where evidence consists of voluminous writings, the contents "may be presented in the form of a chart, summary, or

calculation."  In its supplemental brief, the Government admits that it has not found case law dealing with the issue of a seizing agent testifying to summaries of seized literature or videos.  The Government says that the majority of cases dealing with law enforcement agents testifying to a summary of evidence pursuant to Fed. R. Evid. 1006 concern charts or compilations compiled from objective data, such as phone records, banking records, and business documents.

Despite the lack of authority, the Government relies on Fed. R. Evid. 1006 for the proposition that the seizing agent may testify to summaries of videos.  The Government says its objective is analogous to that in standard applications of Rule 1006.  First, the videos, though not printed materials, are voluminous, with each video lasting between one hour and two and a half hours.  Allowing the seizing agent to summarize the concepts in the videos would lead to efficient presentation of evidence, and prevent unnecessary waste of time.  Second, presenting evidence by way of a summary would reduce the prejudicial effect of the repetitive nature of the videos.  Additionally, Defendants will have the opportunity to cross examine the seizing agent to challenge the summary's accuracy or point out other segments of the video.  Lastly, the Government proposes a limiting instruction that the evidence only be used to establish the particular Defendant(s)' motive and intent, and the relationship among the Defendants.

On the other hand, the Government appears not to rely on Rule 1006 for the authority of a seizing agent to testify to summaries of books.  Instead, the Government says this situation is more analogous to that found in *United States v. Fraser*, 448 F.3d 833 (6th Cir. 2006).   In *Fraser*, the defendant was on trial for bank fraud.  He had

previously authored a book detailing a bank fraud scheme remarkably similar to the crime charged. Though the trial court initially ruled the book inadmissible due to its prejudicial effect, when the defendant argued at trial that he had been duped into the fraudulent scheme, the court admitted the book as prior acts evidence under Fed. R. Evid. 404(b) to prove intent. The district judge fashioned a summary of facts from the text after hearing requests from both parties on what should be included. The court read the summary to the jury along with a limiting instruction. In upholding the use of the summary, the Sixth Circuit said, "The use of a summary, as here, properly mitigates a writing's unfair prejudice." *Id.* at 840.

The Government says *Fraser* provides authority for its proposal to have the seizing agent summarize the concepts in books. The Government proposes the following procedure: (1) the seizing agents will prepare written summaries of the books; (2) the Government will provide the Court and all parties copies of each summary no less than three days prior to that witness's testimony; and (3) the witness will read the summaries that have been approved by the Court and all parties during his testimony. The defense would still have the ability to cross-examine the witness about the books and summaries. Additionally, the Government proposes that a limiting instruction be read to the jury that the evidence only be used to establish the particular Defendant(s)' motive and intent, and the relationship among the Defendants.

The Court believes that neither Fed. R. Evid. 1006, or the Sixth Circuit's decision in *Fraser*, supports the Government's position that a seizing agent may summarize literature, whether written or visual. It is significant that the Government was unable to find any case law directly on point; literary works simply are not the type of evidence

susceptible to objective summation.

Fed. R. Evid. 1006 states:

The proponent may use a summary, chart, or calculation to prove the content of voluminous writings, recordings, or photographs that cannot be conveniently examined in court. The proponent must make the originals or duplicates available for examination or copying, or both, by other parties at a reasonable time and place. And the court may order the proponent to produce them in court.

Admission of Rule 1006 summaries is committed to the sound discretion of the court. *United States v. Green*, 428 F.3d 1131, 1134 (8th Cir. 2005). To establish a proper foundation for the admission of a Rule 1006 summary, the proponent must demonstrate: (1) that the underlying documents are so voluminous that they cannot be conveniently examined in court; (2) the underlying documents have been made available for examining or copying at a reasonable time and place; (3) the underlying documents are admissible into evidence; (4) the summary is accurate and nonprejudicial; and (5) the summary must be properly introduced through the testimony of a witness who supervised its preparation. *United States v. Moon*, 513 F.3d 527, 545 (6th Cir. 2008).

When a summary is admitted pursuant to Rule 1006, the summary itself becomes substantive evidence for the trier of fact to consider. *United States v. Bray*, 139 F.3d 1104, 1110 (6th Cir. 1998), *citing* 2 MCCORMICK ON EVIDENCE § 233; 6 WEINSTEIN'S FEDERAL EVIDENCE § 1006.04[2]. As such, it is especially important that the summary be accurate and nonprejudicial. The Sixth Circuit says the accuracy requirement means that "nothing should be lost in translation," and "the information on the summary is not embellished by or annotated with the conclusions of or inferences drawn by the proponent . . . ." *Id.* Describing the dangers of an inaccurate summary,

the Sixth Circuit added that "a summary containing elements of argumentation could very well be the functional equivalent of a mini-summation by the chart's proponent every time the jurors look at it during their deliberations . . . ." *Id.* Therefore, trial courts must take care that unfair summaries are not presented to juries. *United States v. Scales*, 594 F.2d 558, 564 (6th Cir. 1979); *see also Peat, Inc. v. Vanguard Research, Inc.*, 378 F.3d 1154, 1159-60 (11th Cir. 2004) ("And because summaries are elevated under Rule 1006 to the position of evidence, care must be taken to omit argumentative matter in their preparation lest the jury believe that such matter is itself evidence of the assertion it makes.") (internal quotation and citation omitted).

Rule 1006 cannot serve as the basis to introduce summaries of conspiratorial literatures, whether books or videos. The lack of case law in support of the Government's position is telling. It appears the drafters of the Federal Rules of Evidence did not contemplate that Rule 1006 would be used in this manner, and for good reason. Literary works simply are not capable of objective summary. By point of comparison, the case law is replete with numerous examples of Rule 1006 utilized to distill business records, tax records, phone records, or bank records. This type of concrete, mathematical, objective information is capable of accurate presentation in chart or summary form. Conspiratorial books and videos are not. The Court suspects that if it asked 100 individuals to summarize any given book on the Government's Proposed Exhibit List, it would receive 100 different summaries. Each summary would necessarily reflect the inherent assumptions of the person who composed it.

In addition, the Government's reliance on *Fraser* is misplaced. That case is irrelevant to whether a seizing agent can testify to a summary of literature. In *Fraser*,

the Sixth Circuit upheld admission of a summary of a novel written by the defendant as a prior act under Rule 404(b). The only possible application of that decision to this case is that the book was deemed to be not unduly prejudicial. However, the underlying admissibility of the voluminous evidence, of which undue prejudice is a necessary inquiry, is only one of five required foundational prongs for Rule 1006 admissibility. *Moon*, 513 F.3d at 545. *Fraser* says nothing of the other four prongs.

Of particular interest in this case is application of *Moon's* fourth prong: whether a government seizing agent is capable of presenting an accurate and nonprejudicial summary of conspiratorial literature. The Court is skeptical of his ability to do that for two reasons. First, a seizing agent is a lay witness with no particular literary expertise. Second, literature is, by its very nature, not susceptible of precise summary.

The Court believes it is inappropriate for the Government to attempt to prove an essential element of its case–intent–through inherently subjective summaries. If the Government believes a piece of literature is relevant to prove intent, or is admissible for some other permissible purpose, it must point to the precise part or passage that it says is relevant. The Court will base its decision for admissibility on specific passages, not summaries of entire items.

For these reasons, the Government is precluded from calling a seizing agent whose testimony will be summaries of literature, including books and videos.

## III.    DEFENDANTS' SPECIFIC OBJECTIONS

The Court now examines and, when possible, rules upon Defendants' specific objections.

A.    **Defendant Piatek's Obections**

i.    **Books**

Defendant Piatek objects to the admission of various conspiratorial and anti-government books seized from his residence.  For the purpose of this Order, books will be treated separately from book excerpts and technical manuals, discussed below.  The books Mr. Piatek specifically objects to are:

- Ex. 426. *Hunter*, by Andrew Macdonald

- Ex. 433. *Patriots, Surviving the Coming Collapse*, by James Wesley Rawles
- 
- Ex. 439A. *Can You Survive?*, by Robert B. DePugh

- Ex. 442. *World War III - Coming Soon to Your Neighborhood*, by Jack B. Otto

As discussed, testimony by the seizing agent of a summary of concepts in seized books is not admissible.  The Court now turns to whether the books, or portions of the books as specified by the Government, are otherwise admissible.

The books all contain anti-government and conspiratorial themes that the Government says are relevant to prove motive and intent.  *Hunter* is a fictional account of a man who goes on a killing spree because he is disgusted at the federal government and the elites perceived to be running it.  The protagonist kills individuals in mixed-race marriages to protest what one reviewer calls "the darkening complexion" of America.  Other targets include homosexuals and Jews.  *Patriots* is a novel concerning small militia units fighting the New World Order (NWO), United Nations (UN), and federal government.  Fictional characters use survival techniques to endure the collapse of

America and travel to a ranch in Idaho, where they fend off attacks from outsiders.  *Can You Survive* is a book about how to survive if society collapses and the authorities are after you.  Lastly, *World War III* is a book that lays out the historical narrative of the NWO belief system.

The Government says these books are relevant to show intent and motive.  It argues that the anti-government nature of the literature, combined with the sheer amount of the literature found in Mr. Piatek's residence, raises a reasonable inference that Mr. Piatek had the requisite intent under Counts I and II of the Indictment.  The Government attempts to connect the themes of these books with actual conversations of the Defendants in order to show their relevancy.

Documents such as books are not hearsay when they are offered for a purpose other than for the truth of the matter asserted.  *Biegas v. Quickway Carriers, Inc.*, 573 F.3d 365, 378 (6th Cir. 2009).  The Court believes that the Government is offering the books for a proper, non-hearsay purpose, but does not agree that these books are relevant to this prosecution.  Throughout this case, the Government has maintained that the charges in the indictment are crimes of action, not advocacy.  The nexus between Mr. Piatek's alleged conspiracy beliefs and the crimes alleged is tenuous at best.

The Court's Order of January 30, 2012 granting Defendants' motion to preclude testimony of Government expert Michael Barkun (Doc. 632) explains some of the problems in admitting conspiracy theory books as proof of motive or intent in a criminal prosecution.  There is simply no way to predict, based on possession of conspiracy theory literature, whether the owner adopts the views contained in the books.  Further, it

is impossible to make the additional required leap that someone who has adopted conspiracy theory views will commit acts of violence on account of these views. Millions of Americans read books by popular novelist Dan Brown, which are filled with conspiracy theory themes; it is impossible to say how many of them, if any, are inspired to action on account of the material they have read.

The Court is aware of only one case where a fictional novel was admitted against a defendant, the *Fraser* case discussed above. That case is inapplicable here. In *Fraser* the defendant authored the book, and the crime in the book was nearly identical to the crime charged. No such connection exists between the novels recovered in Mr. Piatek's residence and the crimes charged in the Indictment.

This is a case about whether specific acts violated federal criminal laws. The books described above have no probative value to the charges in the Indictment. The Government's attempt to connect the themes in these books to acts or speeches in this case is pure speculation. It is impossible to say whether Mr. Piatek even read the books, let alone whether his actions were inspired by them.

Additionally, the books risk injecting highly prejudicial and extraneous issues into this prosecution. The Ruby Ridge standoff, the Waco standoff, the Oklahoma City bombing, and the 9/11 attacks have no place in this prosecution. To bring books before the jury that mention these events risks associating Defendants in the minds of the jurors with the perpetrators of these other crimes. In the very least, discussion of these other crimes could distract the jury from the issues in this case.

Therefore, even if possession of the books does make it more likely that Mr.

Piatek committed the alleged crimes, the Court finds that the books should be excluded under Fed. R. Evid. 403 as unduly prejudicial.

The Court excludes the books listed above under Rules 401 and 403.  However, if the Government can point to specific portions it believes are relevant and non-prejudicial, the Court will consider admission of these specific passages.

### ii.    Book Excerpts

The Government identified specific excerpts from certain books that it intends to admit.  The Government does not intend to admit these books in their entirety.

- Ex. 427. *Vicki, Sam, and America - How the Government Killed All Three*, by Randy Weaver (front cover, 1st cover page with autograph, table of contents, pp. 109-113)

- Ex. 439B. *Red Sky*, by Ron Rendelman (cover, introduction, p. 118)

**Exhibit 427**.  *Vicki, Sam, and America* is an account of the Ruby Ridge standoff by an individual who was in the middle of it and survived.  The Government would like to admit pp. 109-113 of *Vicki, Sam, and America*, a section entitled "Who's the Real Enemy?"  This section details how corruption and incompetence within the federal government is destroying America from within.  The section portrays the federal government as the true enemy of America ("The fight for freedom is not in Iraq; it's right here in America"; "The most truly evil men in the world . . . walk the halls of noble establishments in Washington, D.C. or the U.N. tower of New York City.")

The Government says this passage is relevant to establish motive and intent as to Counts I and II of the Indictment.  The Court agrees.  The passage provides helpful background information on who the Hutaree believed their enemy to be.  Whether or not

the jury believes this passage influenced or motivated Mr. Piatek goes to the weight of the evidence, not its admissibility.  Additionally, the Court believes the passage does not contain anything unduly prejudicial or inflammatory that would require exclusion under Rule 403.  The events of Ruby Ridge, which would be a distraction, are not mentioned in this passage.

The pages designated by the Government are admissible.

**Exhibit 439B.**  *Red Sky* is a novel about a standoff where the protagonist is killed by an FBI sniper.  The text also discusses the impending civil war and steps the federal government is taking to disarm the militia.  The Government would like to admit the Introduction and p. 118, sections that describe a government controlled by the NWO, and the duty of militias to revolt and defend America.  The passages describe a federal government that has disregarded the Constitution.  It urges militias to "prepare themselves for war" to protect their rights.

This passage is relevant to establish motive and intent as to Counts I and II of the Indictment.  Count I requires the Government to prove intent to overthrow the federal government by force.  This passage establishes who the Hutaree believed their enemy to be.  Whether or not the jury believes this passage influenced or motivated Mr. Piatek goes to the weight of the evidence, not its admissibility.  Additionally, the Court does not believe the passage is inflammatory or unduly prejudicial.

The pages designated by the Government are admissible.

### iii.    Manuals

The Government seeks to admit certain technical manuals recovered from

Mr. Piatek's residence:

- Ex. 425. *Dragnar's Homemade Detonators*

- Ex. 429. *Militia Field Manual*

- Ex. 430. *Sniper - Training and Employment*

- Ex. 438. *Improvised Munitions Handbook*

- Ex. 440. *Technical Manual for M-16* & *Operation Manual for Misr Semi-Automatic Rifle*

Manuals are routinely admitted to show that a defendant has the knowledge, capability, and intent, to carry out the goals of a conspiracy. *See, e.g., Brown*, 2012 WL 149484 at *12; *Salameh*, 152 F.3d at 111; *Rey*, 923 F.2d at 1219, 1222. However, rather than admitting entire manuals wholesale, the district court is required to admit only portions that are relevant and not likely to inflame the jury. *See Parr*, 545 F.3d at 502 (abuse of discretion to admit entire *Anarchist's Cookbook* when only certain portions were relevant); *Rey*, 923 F.2d 1222 (court admitted manuals in their entirety after finding that "the items in question are not of a type to inflame the jury" and that "such neutral items are not likely to suggest a decision on an improper basis . . . .")

**Exhibit 425.**  The Government seeks to admit the cover, table of contents, preface, and pp. 42 and 45 on clothespin triggers from Ex. 425, *Dragnar's Homemade Detonators*. The Government says that these pages show Defendant Piatek's knowledge of explosives. It says such knowledge is relevant to Counts I and II of the Indictment.  The Government says clothespin triggers are visible in Proposed Exhibit 292A, a Hutaree training video, as well as in a photo retrieved from the Stone

residence.  The Government also says that various Defendants discuss clothespin triggers in one of the undercover recordings.  Lastly, the Government says there is nothing inflammatory in the pages cited.  The Court agrees.

The Court finds that the pages designated from Ex. 425 are admissible to show Defendant Piatek's knowledge and intent with respect to Counts I and II.

**Exhibit 429.**  The Government seeks to admit Ex. 429, *Militia Field Manual*, in its entirety, and to highlight pp. 4-5 (traveling techniques), pp. 45-46 (tank killing steps) and p. 124 (passage on Liberty Tree Radio).  As the proponent of evidence, the Government bears the burden to prove that the evidence is relevant.  It has not met its burden to show that the entire 124-page manual is relevant.  The fact that nothing in the manual is particularly inflammatory, as the Government suggests, does not mean the Court is excused from making an initial Rule 401 determination as to relevancy.

The Court agrees that pp. 4-5 are relevant to establish knowledge and intent with respect to Count I.  The Indictment alleges that traveling to rally points to conduct operations against the Government was part of the conspiracy.  On the other hand, the Government has not met its burden to show that the other pages are relevant.  The Indictment says nothing of tank killing.  In addition, the Government has not made clear how Liberty Tree Radio is relevant to this prosecution.

Pages 4-5 of Ex. 429 are admissible.  The Court reserves ruling on whether any other pages are admissible, subject to a proper showing by the Government.

**Exhibit 430.**  The Government seeks to admit Ex. 430, a sniper training manual. It would like to admit the manual in its entirety and highlight pp 4-5 on ghillie suits.  The

Government says the Defendants had conversations on using snipers, how to be snipers, and how to identify snipers. The Government says knowledge of sniper techniques is relevant to Count I. The Government also says this manual is relevant to show the connection among Defendants since Defendants Sickles and Stone owned ghillie suits, and Defendants Meeks and David Stone owned sniper training videos.

The Court agrees that pp. 4-5 are relevant to show the connection among conspirators, and that other pages may be relevant to show knowledge. However, the Government has not met its burden to show that the entire manual–which is well over 100 pages–is relevant. Therefore, pp. 4-5 are admissible, and the Court reserves ruling on whether any other portions of the manual can be admitted.

**Exhibit 438.** The Government seeks to admit Ex. 438, a Department of the Army *Improvised Munitions Handbook*. It would like to admit the manual in its entirety and highlight the table of contents, pp. 73-74 (pipe hand grenades), and pp. 90-92 (funnel-shaped charges). The Government says it shows knowledge of explosives. The Government says the same manual was in Mr. Meek's house, and drawings taken from the Manual were in the Stone house. The Government also says that Defendants Piatek and Stone had a conversation on making pipe hand grenades.

The Court agrees that the designated pages (TOC, 73-74, and 90-92) are admissible to show knowledge and intent. For the reasons previously stated, the Court reserves ruling on whether any of the other 250 pages are admissible.

**Exhibit 440.** The Government seeks to admit Ex. 440, two manuals on M-16s and Misr Semi-Automatic Rifles. The Government does not designate any pages. It

says knowledge of guns is relevant to Count I.  Additionally, the Indictment states that the Defendants amassed weapons, and the Government intends to introduce numerous weapons at trial.

The Government is not entitled to admit these manuals wholesale.  The Government has not made a proper showing that every page of the manuals is relevant. The Court reserves ruling on whether these items, or specific pages of these items, are admissible.

### iv.  Videos: Exhibit 435

The Government seeks to admit the following video:

- Ex. 435. VHS Tape - Alex Jones - Police State II

The Government says that it does not intend to play any clips but rather to have the seizing agent summarize its contents.  As explained above, a summary from the seizing agent is not admissible.  The Government also says that since Defendants Meeks and David Stone owned the same video, it is admissible to show the relationship among conspirators.

The Court reviewed portions of the video on Youtube.  Any relevance it may have to show connection between the conspirators is eclipsed by the risk it poses of undue prejudice.  Concepts such as the C.I.A. bringing drugs into this country, or "everything you would expect to see in Nazi Germany or Russia" now occurring in the United States, or FEMA camps imprisoning Americans, are completely irrelevant to this prosecution and risk confusing the jury.  Additionally, the Government does not need this exhibit to prove connection among the conspirators; they are all recorded on video

and audio together.  Lastly, this is a two hour video, and the Government has not identified any specific portions that it believes are relevant.

The Court excludes this exhibit under Rule 401 and 403.

### v.    Miscellaneous Items

The Government seeks to introduce the following miscellaneous items seized from Mr. Piatek's residence:

- Ex. 428. Bumper Stickers

- Ex. 431A. "Understanding the Police State"

- Ex. 431B. "The Patriot's Prayer"

- Ex. 434. "Silent Weapons for Quiet Wars"

- Ex. 451. "What I Have Learned from the Twentieth Century"

**Exhibit 428.**  Exhibit 428 is two bumper stickers, one that states "When the Going Get Tough - I Get a Machine Gun," and another of the U.N. symbol with red circle and slash through it.  The Government says these bumper stickers are admissible to show Piatek's knowing and intentional entry into the conspiracy, which included machine guns.  The Government also says the Hutaree considered the U.N. to be their enemy, and that a video on the Hutaree website showed members of the Hutaree burning a U.N. flag.

Mr. Piatek's counsel argues that bumper stickers are meant to be satirical, and that Mr. Piatek's ownership of these stickers does not mean that he adopted their message.

The Court believes that defense counsel's argument goes to the weight of the

evidence, not admissibility.  Both bumper stickers are relevant to establish knowledge and intent with respect to Count I.  The machine gun bumper sticker is relevant to the allegation that Defendants amassed weapons in preparation for revolting against the federal government.  The U.N. bumper sticker is relevant to establish who the Hutaree believed their enemy to be.

The bumper stickers are admissible.

**Exhibit 431A.**  Government Exhibit 431A is a document entitled "Understanding the Police State" by Mark Koernke.  The document describes federal employees as liars violating the rights of Americans from afar.  The document also links the Justice Department with local law enforcement.  The Government says it is relevant to Count I, and shows that Defendant knowingly and intentionally joined the conspiracy.  The Government links the themes in this document with those recited by David Stone in a speech during a trip to Kentucky.

The Court agrees that the document is relevant to show Defendant Piatek's state of mind, that he knowingly joined the conspiracy alleged in Count I.  However, the Court also believes that a certain passage at the end has the potential to inflame the jury and must be redacted.  This passage reads, "Anyway, Keep your powder dry and your pistols close at hand.  Remember, the only good socialist is a dead socialist."  The document is admissible with the designated portion redacted.

**Exhibit 431B.**  Exhibit 431B, "The Patriot's Prayer," is a document that reads: "God grant me the serenity to accept the things I cannot change, the courage to change the things I can, and the weaponry to make the difference!  Never Surrender Your

Firearms!"  The Government says this is relevant to Count I, and shows state of mind, intent, and that Defendant knowingly and intentionally joined the conspiracy.  The Government also connects the themes in this document to those in a speech David Stone made on a trip to Kentucky.

As part of Count I, the Government says Defendants amassed weapons.  This document is relevant to show state of mind, and intent with regard to Count I.  It is only one page, and does not contain anything particularly inflammatory.  It is admissible.

**Exhibit 434.**  Exhibit 434 is a document entitled "Silent Weapons for Quiet Wars."  This document purports to have been recovered from a government copier sold for scrap, and describes a plan for government control of the masses by way of silent weapons.  The Government says it is offered to show intent and motive.  The Government says the Hutaree's solution to perceived government control and manipulation of its own people was to revolt violently.

This document is relevant to show Defendant Piatek's state of mind and intent with respect to Count I.  However, the Court believes that one anti-Semitic passage must be redacted, in order to mitigate the risk of unfair prejudice and avoid introducing an extraneous issue.  The second paragraph of the Preface must be redacted to exclude the words after "forgery."

**Exhibit 451.**  Exhibit 451 is a document called "What I have learned from the twentieth century."  The Government believes this document is relevant to show intent and motive with respect to Count I.  The Court, however, finds that it is highly prejudicial and risks inflaming the jury.  The document repeatedly states that if a bureaucrat knocks

on your door, kill him.  The document also mentions irrelevant historical figures such as Stalin and Hitler.

The document is excluded pursuant to Rule 403.

**B.    Defendant Sickles' Objection: Exhibit 588**

Defendant Sickles objects to Ex. 588, a book entitled *Behold A Pale Horse*, by William Cooper.  This is a book on the New World Order, the conspiracy theory that posits the world is run by a select group of elites.  The Government says it does not intend to highlight any passage or offer the entire book into evidence, but it would like to submit scanned images of the cover, table of contents, and the chart in the back listing New World Order participants.  The Government says that the chart is similar to Ex. 125, a chart found at David Stone's house, and Ex. 605, a chart given to the undercover agent by Defendant Meeks.  The Government says the chart is relevant in that it shows the connection and unity of thought among the co-conspirators.

The Court agrees.  The chart is probative of not only the connection among the conspirators, but also the underlying world view that united them.  The idea that the world is run by a select group of elites capable of being identified on a single sheet of paper provides helpful background for the jurors to understand the motives of the alleged conspiracy.  Such background and motive evidence is admissible.  *See Salameh*, 152 F.3d at 111.  Lastly, there is nothing unduly prejudicial or inflammatory in the chart.

The pages of Ex. 588 designated by the Government are admissible.

**C.    Joint Objections of David Brian Stone, Joshua Stone, and Tina Mae Stone**

### i.    Videos

Defendants David Stone, Joshua Stone, and Tina Mae Stone object to the following videos:

- Ex. 83 A-D. Hutaree Training Videos

- Ex. 123 A-K. Video Tapes

- Ex. 148 A-I Video DVDs

**Exhibit 83**.  Exhibit 83 contains videos recovered from the Hutaree website ranging in length from 1 minute, 53 seconds to 4 minutes, 15 seconds.  They show Hutaree members practicing military techniques and operations.  Ex. 83A shows Hutaree members conducting training, an explosive device, and the burning of a U.N. flag.  In Ex. 83B they conduct various assault techniques. Ex. 83C is a video of Hutaree members practicing police tactics.  And, in Ex. 83D Hutaree members conduct a variety of military operations, including forced entries, knife fighting, fields of fire, vehicle cover, suppressing fire, man-down frills, and casualty extraction.

Defendants object on foundation that these are "Hutaree training videos."  The Government says it will change the heading to "Hutaree videos from Hutaree website."

Defendants also say the videos are irrelevant under Rule 401 and unduly prejudicial under Rule 403.  The Government says that these videos are directly relevant to Count I and Count II of the Indictment.

The Court agrees with the Government.  The Indictment alleges that the Hutaree engaged in military style training in preparation for opposing the federal government by force.  These videos show alleged Hutaree members performing various military

exercises.  Ex. 83A, which shows the explosion of a destructive device, is also directly

relevant to Count II, conspiracy to use weapons of mass destruction.  The Court

reviewed these videos and does not believe they contain anything unduly prejudicial.

They are admissible.

**Exhibit 123**.  Defendants next object to Ex. 123 A-K and adopt the arguments in

Defendant Piatek's brief.  These are videos produced by Alex Jones and Mark Koernke

with titles such as "The Police State," "9/11 The Road to Tyranny," "America Wake Up

or Waco," "America in Peril Part II," etc.  The Government says it does not intend to play

any particular clips from these videos.  The Government says the videos will be offered

to show relationship among the conspirators since the same videos were found in

Defendant Piatek's residence, as well as to show intent and motive of the Stones.

For the reasons stated in Section III.A.iii of this Order, these videos are not

admissible.  The Government does not need these videos to show connection among

the conspirators, and any relevance the videos have to establish motive and intent is

eclipsed by the risk of undue prejudice.  Concepts such as Waco and 9/11 risk

distracting the jurors from the real issues.  Further, there is a risk that the jurors may

improperly associate members of the Hutaree with other conspiracies discussed in the

videos.

The Court excludes these videos under Rule 403.

**Exhibit 148.**  Defendants next object to various DVDs marked as Exhibit 148 A-I.

The Government has specified video clips that it intends to play.  The specific videos

are:

- 148A - "Loose Change" - 9/11 conspiracy video

- 148B - "Fall of the Republic" - Alex Jones DVD discussing One World Government and "elitists"

- 148C - "Waco" - extended documentary on Waco tragedy (Government does not intend to play clips)

- 148D - "High Risk Entry" - police tactics training video

- 148E - "Sniper! Sniper!" - sniper training video

- 148F - "Art of Camouflage" (Government does not intend to play clips)

- 148G - "One Nation Under Siege" - DVD discussing New World Order

- 148H - "Endgame" - Alex Jones DVD discussing New World Order

- 148I - "The Obama Deceptions" - DVD distributed by Liberty Tree Radio

The Government says these videos will be offered to show connection among the conspirators, shared knowledge and intent, identifying who the Hutaree believed their enemy to be, as well as intent and motive for the Stone Defendants. Defendants adopt the arguments in Defendant Piatek's brief, presumably that the videos are irrelevant under Rule 401 and unduly prejudicial under Rule 403. The Court reviewed portions of the videos.

**Exhibits 148D and 148E.** Exhibits148D and 148E are relevant to show knowledge to carry out the goals of Count I. These two videos involve military and police training, which the Indictment alleges Defendants engaged in to prepare for the uprising against the government. The videos are not inflammatory. They are admissible.

**Exhibit 148F.** The Government has not provided any clips from Ex. 148F. If it is

an instructional video on camouflage, it is admissible for the same reasons as Ex. 148D and Ex. 148E.

**Exhibits 148A, B, C, G, H, I.**  These videos are filled with inflammatory and irrelevant concepts and are excluded.  As the Court explained above and in previous orders, theories that the federal government is behind 9/11 and FEMA concentration camps, or that the CIA is behind the creation of Al-Qaeda, have no place in this prosecution.  These concepts are highly inflammatory and would only serve to distract the jury.  Whatever force these concepts may have had to motivate Defendants is outweighed by the risk of unfair prejudice inherent in these videos.  In addition to irrelevant concepts, the videos are full of inflammatory imagery, such as images of Hitler, Stalin, Nazi concentration camps, and graphic footage of 9/11.

Defendants' political views are not on trial.  There is a massive difference between believing the conspiracy theories in these videos and committing the acts alleged in the Indictment.  The Court excludes them under Rule 401 and Rule 403.

### ii.  Miscellaneous

Defendants object to theses proposed miscellaneous Government exhibits:

- Ex. 125. Chart - "Establishment Elite Still in Control"

- Ex. 288. Evidence associated with David Stone and/or Tomer Road

- Ex. 650. Metal Pieces

- Ex. 667-674. Demonstrative Explosive Evidence

**Exhibit 125.**  This is a chart of "elitists" representing the NWO.  The Government says this chart is similar to the ones possessed by Mr. Piatek (Ex. 588) and Mr. Meeks

(Ex. 596).

For the reasons already stated in Section III.B. of this Order, the Chart is admissible.

**Exhibit 288.**  The Government says this is a document handed to the undercover agent by David Stone on March 13, 2010.  The Court cannot rule without more information.

**Exhibit 650.**  Exhibit 650 does not involve conspiratorial literature; it is outside the scope of this Order.  The Court reserves ruling.

**Exhibits 667-674.**  The Court has already addressed and ruled upon demonstrative explosive evidence in its orders dated January 19, 2012 (Doc. 605) and January 26, 2012 (Doc. 620).  As previously stated, the Government is required to lay the proper foundation for admissibility at trial.

**D.    Objections of Michael Meeks**

    **i.    Videos**

Defendant Meeks objects to certain videos:

- Ex. 604. Large case containing multiple DVDs

- Ex. 612A-D. Videos

- Ex. 618A-D. Videos

**Exhibit 604.**  The Court has not viewed any of the DVDs from Exhibit 604 and the Government has not pointed out their relevance.  The Court is not in a position to rule.  To the extent the DVDs are the same or similar to the DVDs marked as Ex. 148A-I, the Court refers the parties to that section.

**Exhibit 612 and 618.**  These videos are conspiratorial in nature, irrelevant, and likely to be inflammatory; they are excluded for the reasons stated above regarding Ex. 148.  The only exception is Exhibit 618D, "The Art of Camouflage," which the Court addressed previously (see discussion above for Ex. 148F).

### ii.    Manuals

Defendant Meeks objects to the admission of the following manuals:

- Ex. 622A.  *Improvised Munitions Handbook*

- Ex. 622B.  *Unconventional Warfare Devices and Techniques*

- Ex. 622C.  *Explosives and Demolition*

- Ex. 622D.  *Booby Traps*

- Ex. 622D.  *Secret Two Component High Explosive Mixtures and Improvised Shape Charges*

- Ex. 622F.  *The Original Poor Man's James Bond, Vol.1*

The Court has not been provided copies of these materials for review.  The Court cannot rule without first conscientiously reviewing all the material in the books to determine relevancy and potential for undue prejudice.  The Government must provide the Court copies of these books to review at a reasonable time prior to when it intends to introduce them at trial, along with the pages the Government believes are relevant.

### iii.    Miscellaneous

Defendant Meeks objects to the following miscellaneous materials:

- Ex. 596.  "Establishment Elite Still in Control" - Chart of Elitists

- Ex. 597.  911 Bumper Sticker

- Ex 601.  Wire purportedly from Waco

- Ex. 647. Documents - "UK Foot and Mouth Came from a U.S. Lab!"; and "Bankers Planned World War to Destroy Germany"

**Exhibit 596.**  This is a chart similar to two other ones that the Government intends to offer into evidence.  It is admissible.  See discussion regarding Exhibits 588 and 125.

**Exhibit 597.**  This is a bumper sticker that states: "Remember 9-11 was an inside job."  The Court believes 9/11 conspiracy theories are not relevant to this prosecution.  Additionally, bringing 9/11 into this case risks distracting the jury from the real issues.

The bumper sticker is excluded under Rules 401 and 403.

**Exhibit 601.**  Exhibit 601 is not conspiratorial literature and is outside the scope of this Order.  The Court reserves ruling on that exhibit.

**Exhibit 647.**  These are documents that have not been provided to the Court for review.  The Court reserves ruling.  However, based on their titles, they appear irrelevant and likely to be excluded under Rule 401.

## IV.    Conclusion

Where the Court reserved ruling, the Government will be required to demonstrate admissibility at trial.

**IT IS ORDERED.**

S/Victoria A. Roberts
Victoria A. Roberts
United States District Judge

Dated:  February 10, 2012

The undersigned certifies that a copy of this document was served on the attorneys of record by electronic means or U.S. Mail on February 10, 2012.

S/Linda Vertriest
Deputy Clerk